FIRST NATIONAL BANK OF MANISTEE *v.* MARSHALL & ILSLEY BANK OF MILWAUKEE.

1. CHATTEL MORTGAGES—PRIORITIES—OWNERSHIP OF PROPERTY MORTGAGED.

Where, in replevin by a mortgagee, the defendant claims under a later mortgage executed by a corporation which had succeeded to the business of the first mortgagor, and there is a fair dispute in the testimony as to whether or not the first mortgagor transferred the property in question to the corporation, a request by the defendant that a verdict be directed in its favor on the ground that plaintiff's mortgage was not upon file when defendant extended credit to its mortgagor is

properly refused, the question as to the title to the property being for the jury.

2. SAME—ESTOPPEL.

Statements made by a mortgagor of chattels for the purpose of obtaining credit for a corporation of which he was a member, to the effect that he had sold the mortgaged property to such corporation, are not conclusive upon the mortgagee, unless he knew of them at the time, and kept silent; nor is he estopped to claim under his mortgage merely because the property was permitted to remain in the apparent control of the corporation.

3. ESTOPPEL—WHAT CONSTITUTES.

In order to create an estoppel *in pais,* it must appear that the party making the representations knew or was informed that the party to whom they were made intended to rely upon them.

4. SAME—BANKS AND BANKING.

A bank is not estopped to assert a chattel-mortgage lien on the property of one of its debtors by the fact that, in reply to a letter from another bank inquiring as to the character and financial standing of the debtor, but containing no intimation that a loan was contemplated, it merely commended the debtor's business reputation and personal habits, and gave the amount of his assets above liabilities, without disclosing the existence of such mortgage or the indebtedness represented thereby.

5. BILL OF SALE—SUFFICIENCY AS SECURITY.

An objection that a bill of sale is too indefinite and uncertain to have effect as security, in that it fails to state the amount secured thereby, cannot be raised by one who has acquired no valid lien on the property.

6. EVIDENCE—ADMISSIONS.

Statements made by a mortgagor of chattels, inimical to the interests of the mortgagee, are properly excluded in an action between the latter and a third person, in the absence of testimony tending to connect the mortgagee therewith.

Error to Benzie; Aldrich, J. Submitted December 6, 1895. Decided December 30, 1895.

Replevin. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff claims the right of possession of the property here in controversy by virtue of a bill of sale executed by one Leo F. Hale, September 2, 1893, and filed in the office of the township clerk June 7, 1894. It is absolute in form, but in fact was given as security for a debt due from Hale to the plaintiff, as evidenced by promissory notes amounting to about $20,000. The property described in the bill of sale was "all the cedar, cedar shingle timber, consisting of logs and bolts now in my mill boom, and in and around Lower Herring Lake, in the county of Benzie, State of Michigan, bearing stamp mark thus, 'H' or 'HD' or '(H)', belonging to me, and now in my possession, at the place herein described." The defendant bank claims the right of possession of this same property by virtue of a chattel mortgage executed July 9, 1894, by the Watervale Manufacturing Company, of Benzie county, a corporation, to it, to secure an indebtedness of $23,000, loaned by said bank to said company. This mortgage covers all personal property of every kind, nature, and description belonging to the Watervale Manufacturing Company, situate in the county of Benzie or elsewhere, and described as "consisting principally of hardwood, hemlock, and cedar saw logs, cordwood, and stovewood, shingle bolts, tan bark, cedar posts, railroad ties, lumber, shingles, horses," etc. Soon after the execution of this mortgage, the defendant bank took possession of all the personal property of the company, and also that here in dispute.

For some 10 years prior to the formation of the Watervale Manufacturing Company, Mr. Hale had been engaged in the lumbering business at Watervale, Benzie county, doing his banking business with the plaintiff. He had been a borrower from it, varying at different times from $10,000 to $30,000, and was always required to give security. During the year 1893 he had secured the plaintiff by assigning to it his contracts for the purchase of certain real estate, and also by an assignment of stock of the South Arm Lumber Company, valued at $7,500. He

gave this bill of sale as additional security, and at the same time the plaintiff released to him the stock of the South Arm Lumber Company, and it was in consideration of such release that this bill of sale was given. In December, 1893, Mr. Hale desired to borrow more money, and made efforts to get other parties interested with him. This, Mr. Ramsdell, the president of the bank, knew. Mr. Hale negotiated with two gentlemen, named Williams and Mansfield, to take an interest in the business. This negotiation resulted in the formation of the Watervale Manufacturing Company, on a basis of a capital stock of $75,000, of which they reported as paid in $60,000. Mr. Hale took $30,000, and Messrs. Williams and Mansfield, $15,000 each, for which they gave their notes to Mr. Hale. The $60,000 paid-up capital represented the mill plant and property transferred to the corporation by Mr. Hale. The property covered by the bill of sale was worth between $6,000 and $7,000.

While negotiations were pending between Hale, Williams, and Mansfield, Hale made out and submitted to them two statements of the amount of his property, the first of which was a statement of his live stock and logging outfit, amounting to $1,550. The other was a statement of his mill plant, logs, etc. In this latter statement was an item as follows: "Cedar stock in boom, $6,000." Neither of these statements was ever shown to the defendant bank prior to making the loans to the Watervale Manufacturing Company. Mr. Hale testified that he informed Mr. Williams during the negotiations of his indebtedness to the plaintiff, and how it was secured. Mr. Hale's testimony as to whether the property covered by the bill of sale was included in his statement made to Williams and Mansfield is conflicting. At one time he testified that it was not, and at another he testified that he thought the "above item was a memorandum of his First National Bank stock." This is of but little importance, except as it may affect the credibility to be given to Mr. Hale's testimony, inasmuch as this statement formed no

basis for the loans made by the defendant. The corporation was formed December 28, 1893, and, in the bill of sale executed by Hale to it of the personal property, he transferred it all, "excepting cedar stock heretofore conveyed by bill of sale to the First National Bank of Manistee."

One Ellis had been acting as salesman for Mr. Hale in Milwaukee in selling his lumber. At the time the company was organized, a conversation took place between Hale, Williams, and Ellis about obtaining a loan from the defendant. This loan was negotiated by Mr. Ellis, and, for the purpose of furnishing information as to the financial condition of the Watervale Manufacturing Company, Hale, on December 28, 1893, prepared a statement of the assets and liabilities of the company. This statement showed assets to the amount of $66,880, and an indebtedness of $6,880. Among the assets in this statement was the following item: "Lumber, logs, hay, grain, feed, timber, bills of sale, etc., $9,000." This statement was shown to defendant bank by Mr. Ellis. Mr. Ilsley testified that he said to Mr. Ellis: "If our correspondent, the First National Bank of Manistee, would corroborate what he said as to the standing and responsibility of Mr. Hale, as to his character and trustworthiness, I thought that we would make the loan." On the same day, Mr. Ilsley wrote to Mr. Dunham, the cashier of the plaintiff, as follows: "Will you be kind enough to give us what information you can in regard to the character and financial standing of Leo F. Hale, of Watervale, which will be regarded as entirely confidential." On the same day, Williams, who was then in Milwaukee, telegraphed to Hale, who was at Watervale: "Think O. K. See letter bank wrote to Ramsdell." On receipt of this, December 30th, Mr. Hale wrote to Mr. Williams as follows:

"Your telegram of 29th inst.: 'Think O. K. See letter bank wrote to Ramsdell.' On receipt of same this a. m., I wrote Mr. Ramsdell fully, stating what we had done to organize company, etc., etc., and went over every-

thing, and asked him to put no cold water on the matter, and I take that letter to Frankfort with me this a. m.    I will mail it same time I do this, so that it goes out this afternoon.    I wrote you this morning, mailing papers you left, etc.    Now, I hope money matters will be all right, and that I shall know soon, as you know my position, I think, fully, and do not wish to get embarrassed on the start.    I gave Ramsdell the same statement I gave you in detail, etc., so that he would act understandingly.    Now, should you ·send telegram in the morning before 10 o'clock, send it to Pierport, Mich.    If after that time, ʼsend it to Frankfort, Mich."

On January 2d Mr. Dunham replied to Ilsley's letter, as follows:

"In reply to yours of the 29th ult., .would say, Mr. Hale has a fine reputation as a competent, careful, and industrious business man.    He has no bad or expensive habits, but always gives his business the closest attention, and is very careful in his expenses.    As near as I can judge, he has invested in his business about $40,000 above his indebtedness.    Had lumber held up as well as it opened in the spring, I understand he would have cleaned up nearly all of his indebtedness."

The loan was then made by the defendant to the Watervale Company.    The property in dispute was left in the same place as when the bill of sale was given, and was also there when defendant's chattel mortgage was given.

The court gave the following instructions to the jury:

"Before the plaintiff in this case can recover at all, you must find from the evidence that the property or cedar logs described in its declaration is the identical property or cedar covered by its bill of sale; and, if any of this stock taken upon the writ in this case was put in the boom by the Watervale Company after the giving of said bill of sale, as to such part there can be no recovery on the part of the plaintiff.

"The burden of proof in this case is upon the plaintiff to satisfy you, by a fair preponderance of all of the evidence, of the elements and facts necessary to entitle it to recover in this case; and, unless it does so satisfy you, it will be ʼ your duty to find a verdict of not guilty.

"The bill of sale under which this plaintiff claims the

right to recover its property is in its hands a mere security or mortgage, if valid for any purpose; and, no change of the possession of the property covered by it having taken place, it was the duty of the plaintiff, under the statute, to have filed it in the office of the township clerk, which it is admitted was not done for more than nine months after its execution. It bears date September 2, 1893, and was not filed until the 7th day of June, 1894.

" In this case the defendant bank is a creditor of both Leo F. Hale and the Watervale Company; and under the circumstances of this case, and the fact that the plaintiff's bill of sale was not filed as required, the good faith or intention of the parties to the bill of sale cannot affect the rights of the defendant bank, if it extended credit to these parties without notice or knowledge of such bill of sale, and during the time it was withheld from record. Under these conditions and circumstances, the statute makes the bill of sale absolutely void as to the defendant bank.

" If the representations contained in the plaintiff's reply to the defendant bank's letter of inquiry were false or intentionally misleading, and the fact of the existence of the bill of sale was concealed or withheld to induce credit on the part of the defendant bank to Hale or his company, then the credit given in reliance upon this letter is entitled to preference, and the plaintiff cannot recover.

" There is no evidence in this case tending to show that the defendant bank had any notice or knowledge of either Hale's indebtedness to the plaintiff or the bill of sale held by it; and I therefore charge you that the defendant bank loaned its money without such notice or knowledge, and its good faith in extending its credit cannot be questioned, and that the amount thereof now due is $17,726.20, with interest.

" In this case the defendant bank had the right at the time it took its mortgage, on the 9th day of July, 1894, to take the same, notwithstanding the fact that the plaintiff's bill of sale may then have been on file, as the evidence discloses that the indebtedness was incurred during the time the bill of sale was withheld from record.

" Now, this bill of sale cannot be held to cover any of the indebtedness of Hale's to the plaintiff bank, incurred subsequent to its date.

" The bill of sale in this case not disclosing the actual consideration for which it was given, or the indebtedness secured by it, that information could only be given by the plaintiff or by Hale; and, if the plaintiff knew that the

defendant bank was loaning money to Hale and the Watervale Company, it was the duty of the plaintiff bank to inform the Marshall & Ilsley Bank what security it held, its nature and amount.

"It is not material in this case that the Marshall & Ilsley Bank had security on other property than that in dispute in this case, because it has a right to insist upon all of its security until all of its debts are paid in full.     *     *     *

"If you find from the evidence in this case that the plaintiff's bill of sale was withheld from record for the purpose of allowing Hale to hold himself out to the world as the owner of the property described in it, your verdict will be in favor of the defendant bank.

"If you find that, prior to the time that plaintiff wrote defendant bank in reply to its letter of inquiry, the plaintiff received a letter from Hale informing it of the application to defendant bank for a loan, and asking plaintiff to throw no cold water on such application, and plaintiff, in compliance with such request from Hale, wrote its letter of January 2d to defendant bank, concealing its claim and securities against Hale, your verdict will be in favor of defendant bank.

"Now, the mortgage to the Marshall & Ilsley Bank does not appear to have been taken subject to the bill of sale or claim of the plaintiff; and I charge you that it is not subject to the same in case that you should find, under all of the evidence, that it covers that property at all.

"I further charge you on request of the plaintiff, that the plaintiff is not and cannot be bound by any statements made by Leo F. Hale in his letters of December 30, 1893, to William M. Williams, and on January 1, 1894, to C. H. Ellis, unless it is also shown that the letter therein stated to have been written to Ramsdell was actually written by Hale to Ramsdell, and received by Ramsdell. And if you should find that the letter written by Dunham, cashier of the First National Bank, was written merely as one bank correspondent to another, without any purpose to influence them in loaning money, and that he wrote as to his best knowledge as to the facts therein stated, and made a fair statement of the facts in the case, then you could not consider that as any evidence of bad faith on the part of the First National Bank.

"Now, I will charge you further, gentlemen, on some of these matters,—some that I have already touched upon

in these requests, and some that I have not. On September 2, 1893, Leo F. Hale made a bill of sale to the plaintiff in this case of certain cedar timber described therein, and which is the property in dispute in this case. This bill of sale was absolute on its face, but it is claimed it was given as security for certain indebtedness from the said Hale to the plaintiff, in which case it will operate as a chattel mortgage upon the property therein mentioned. This bill of sale was not recorded until the 7th day of June, 1894, and for that reason was void as to any of the creditors of the said Leo F. Hale, whose claims arose between the making and the filing of said bill of sale. It would also be void as to any subsequent purchaser or incumbrancer of the property described therein, without notice of its existence.

"One of the first questions in dispute in this case is whether this property was ever sold by Leo F. Hale to the Watervale Manufacturing Company. If it was sold to the Watervale Manufacturing Company, and they took it without notice to the other members of the company, besides Mr. Hale, of this bill of sale, between the making and the filing of the bill of sale, then it would have been void as to the creditors of the said Watervale Manufacturing Company; and, if you should so find, the plaintiff cannot recover. If you should find that the property mentioned in this bill of sale was sold by Leo F. Hale to the Watervale Manufacturing Company subject to this bill of sale, then this company would stand in the same relation to said bill of sale as Hale himself stood, and the bill of sale would have been void as to the creditors of said company who had no actual knowledge of its existence; and if you should so find, and also find that the defendant bank loaned the money which it claims to have loaned to the Watervale Manufacturing Company, and that they loaned this money without knowledge of this bill of sale, then the plaintiff in the case cannot recover. If, on the other hand, you find from the evidence in this case that the property described in this bill of sale was never sold by said Hale to the Watervale Manufacturing Company, and that he never sold his interest in said property subject to said bill of sale to the Watervale Manufacturing Company, but retained whatever interest he had in said property in himself, and that the plaintiff in this case, or its agents, did no act to lead the defendant bank to believe that said property belonged to Hale or the

said Watervale Manufacturing Company, then, in that case, the creditors of the Watervale Manufacturing Company would have no interest in such property as such creditors; but in that case the bill of sale would have been void as to the creditors of Hale. But the general creditors of Hale could not attack the bill of sale; only those creditors who have gained some lien upon the property, given by Mr. Hale. In that case the Watervale Manufacturing Company could not mortgage this property, and a mortgage given by the Watervale Manufacturing Company upon all of its property would not cover the property in question, or give the mortgagee thereto the right to its possession. Therefore, if you should so find, and should also find that the bill of sale was good as between the plaintiff and Leo. F. Hale, then the plaintiff would be entitled to recover in this case (unless you should find that said Hale voluntarily turned over this property to the Marshall & Ilsley Bank upon his indebtedness to it); and, if you should so find, your verdict would be guilty as against the defendant, the Marshall & Ilsley Bank."

*Dovel & Smith* and *Frank M. Hoyt*, for appellant.

*George L. Hilliker* (*Pratt & Davis* and *Hanchett & Hanchett*, of counsel), for appellee.

Grant, J. (*after stating the facts*). 1. The defendant requested the court to direct a verdict for the defendant upon the ground that the bill of sale was in effect a chattel mortgage; that it was not upon file when the defendant extended credit to the Watervale Company, and was therefore void as to it. If this bill of sale had been given by the Watervale Company to the plaintiff, or if said company had succeeded to the rights of Mr. Hale in the disputed property, and it conclusively appeared that it had done so, then the defendant would, undoubtedly, be right in its contention. The disputed question of fact was whether Mr. Hale had so transferred it. Neither he nor his associates nor the Watervale Company contend that it was. The bill of sale by Hale to the company expressly excepted it. Mr. Hale testified that it was not included. The plaintiff never assented to the possession,

control, or ownership of the corporation in this property. The fact that it was left there by the mutual consent and knowledge of all the parties does not estop the plaintiff to assert its rights under its bill of sale. It was perfectly competent for plaintiff and Mr. Hale to make this arrangement. If it be a fact that Mr. Williams and Mr. Hale did include this in the statements they made to the defendant bank, this would not conclude the plaintiff, unless it had knowledge at the time that it was included, and kept silent. There was a fair dispute in the testimony as to the title of this property, and it was properly, and under a careful charge, submitted to the jury. So, also, was the question whether the plaintiff withheld its bill of sale from ecord for the purpose of enabling the Watervale Company to obtain a loan from the defendant.

2. It is insisted that it was the duty of the plaintiff, in reply to the letter of the defendant inquiring as to the character and financial standing of Mr. Hale, to state the indebtedness of Mr. Hale to it. There might be circumstances where this would be required. This letter, however, contained no intimation that the defendant bank was intending a loan to Mr. Hale. In fact, it contemplated a loan to the corporation, and made the loan to it; but no intimation of this purpose is found in the letter.

In order to create an estoppel *in pais*, it must appear that the party making the representations knew or was informed that the party to whom they were made intended to rely upon them. The rule applicable to this case cannot be better stated than it was by Lord Campbell, in *Howard* v. *Hudson*, 2 El. & Bl. 10:

"If a party willfully makes a representation to another, meaning it to be acted upon, and it is so acted upon, that gives rise to what is called an 'estoppel.' It is not quite properly so called; but it operates as a bar to receiving evidence contrary to that representation, as between those parties. Like the ancient estoppel, this conclusion shuts out the truth, and is odious, and must be strictly made out. The party setting up such a bar to the reception of the truth must show both that there was a willful intent

to make him act on the faith of the representation, and that he did so act."

See, also, *Andrews* v. *Lyon*, 11 Allen, 349; *Hyde* v. *Powell*, 47 Mich. 156; *Heyn* v. *O'Hagen*, 60 Mich. 150; *Pearson* v. *Hardin*, 95 Mich. 369; *Pierce* v. *Andrews*, 6 Cush. 4 (52 Am. Dec. 748); *Freeny* v. *Hall*, 93 Ga. 706; *Meisel* v. *Welles*, 107 Mich. 453, where the meaning of the term "willful" is discussed.

No statement of liabilities was called for, but only his character and financial standing as a business man. Banks, as well as individuals, frequently write for information of this character. Business men of the highest standing and credit often obtain loans at banks for carrying on their business. When an inquiry comes to such bank asking simply for the character and financial standing of the merchant, the bank is not bound at its peril to report any loans which such merchant may have at its bank. Banks, too, often make such inquiries, not for themselves, but for their local customers. The plaintiff was not therefore, as a matter of law, estopped by its letter in this case. The entire question was submitted to the jury, under instructions very favorable to the defendant.

3. Error is assigned upon that portion of the instructions above stated in regard to the statements found in the letter of Mr. Hale of December 30, 1893, to Mr. Williams, and to the letter of Mr. Dunham, the cashier, to Mr. Ilsley. The proof was not conclusive that Mr. Hale wrote the letter to Mr. Ramsdell. He is not positive that he wrote it, and he stated that he found no copy of such letter in his letter book, in which it was his custom to keep copies of his letters. Mr. Ramsdell was a witness, and was not asked by either party in regard to this letter. Under the evidence, the question was one of fact for the determination of the jury.

4. It is claimed that the bill of sale upon its face is too indefinite and uncertain to have effect as security. This might become important if Hale had conveyed the title to

his company, and if it were conclusively established that the defendant bank had obtained a valid lien upon the property as that of the Watervale Company. As between the vendor and the vendee, or the mortgagor and the mortgagee, the bill of sale could not be held indefinite and uncertain for failure to state the amount secured thereby. Under the instructions, the jury must have found that the title was not conveyed by Hale to the company. Therefore the defendant is not in position to raise this question.

5. Complaint is made of the rejection of certain testimony offered in regard to statements claimed to have been made by Mr. Hale after the defendant had obtained its mortgage. There was no offer to connect the plaintiff with these statements, and therefore they could not be binding upon it. The testimony was properly rejected.

We find no error upon the record, and the judgment is affirmed.

LONG, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.