## FIFTH NATIONAL BANK v. PIERCE.

1. NATIONAL BANKS—UNAUTHORIZED SECURITY—VALIDITY.

    While the taking of unauthorized security by a national bank might afford a reason for the forfeiting of its charter by the government, security so taken is not necessarily invalid.

2. MORTGAGES—FAILURE TO RECORD.

    A woman intrusted to her brother-in-law, for more than 20 years, the management and use of her property, relying wholly upon him to take care of her interests. The brother-in-law, becoming insolvent, conveyed to her certain property, subject to a mortgage which had been left unrecorded for one year after its execution. Thereafter she resisted foreclosure, claiming that, during the time the mortgage was not of record, she was ignorant of its existence, and was thereby led to trust her brother-in-law more implicitly than she would have done had she known that his property was incumbered. *Held*, that her long acquiescence in his management negatived the contention that she was misled by the omission in question.

3. SAME—FORECLOSURE—DEFENSES—CROSS-BILL.

    Where a defendant in foreclosure proceedings files a cross-bill asking that the mortgage be postponed to his levy of execution as a judgment creditor of the mortgagor, for the reason that the mortgagee had misled him into extending credit by false statements as to the mortgagor's responsibility, he cannot urge upon the hearing a further reason, not stated in the cross-bill, that the mortgage was for some time left unrecorded, to his damage.

4. SAME—PRIORITIES—ESTOPPEL.

    That a bank, in reply to a letter asking for information as to the capital, character, promptness, and responsibility of a specified person, answers in good faith that he is in good standing and credit, and claims to be worth a specified amount, without referring to a mortgage which such person has given to the bank, does not thereby entitle the one making the inquiry to priority over such mortgage for a credit given to the mortgagor, especially where reliance is not placed solely on such communication, but similar communications are sent to other banks, and the reports of commercial agencies are consulted.

5. SAME—DELIVERY—DOWER.

A mortgage executed by husband and wife under an agreement that it is to be delivered and put upon record when the husband consents thereto will pass the wife's inchoate dower right upon its delivery and recording by the husband's consent.

6. SAME—INTEREST—USURIOUS RATE—MISTAKE OF SCRIVENER—CORRECTION ON FORECLOSURE.

Where a mortgage is drawn upon a printed blank which fixes a rate of interest above the legal rate, and, through an error of the scrivener, in a single instance the printed form is not changed to accord with the lawful rate agreed upon, the instrument is not thereby rendered usurious, but the mistake may be corrected on foreclosure.

7. SAME—REDEMPTION PERIOD—SUFFICIENCY.

A decree foreclosing a mortgage, which authorizes a sale of the premises at any time after 32 days after such decree, unless the amount found due thereon should be paid, is not invalid as not allowing a reasonable time in which to redeem, where the mortgage was entirely due nearly two years before the decree was rendered, and the foreclosure suit was commenced 21 months before the decree.

8. SAME—RENTS AND PROFITS—RECEIVER PENDING FORECLOSURE.

A mortgagee is not entitled to have a receiver of the property appointed pending foreclosure, even though it appears that the mortgagor's grantee does not intend to apply the rents and profits to the payment of the incumbrance.

Cross-appeals from Kent; Adsit, J.   Submitted February 5, 1898.   Decided June 28, 1898.

Bill by the Fifth National Bank of Grand Rapids against Edwin S. Pierce and wife, Emma L. Chamberlain, the Charles P. Kellogg Company, and others, to foreclose a mortgage.   From a decree of foreclosure, defendants Chamberlain and the Charles P. Kellogg Company appeal, and complainant appeals from an order refusing to appoint a receiver.   Affirmed.

*Uhl, Hyde & Earle* and *Carroll, Turner & Kirwin,* for complainant.

*Butterfield & Keeney,* for defendant Chamberlain.

*G. A. Wolf* (*W. D. Fuller,* of counsel), for defendant Charles P. Kellogg Company.

MOORE, J. Complainant filed a bill to foreclose a mortgage made by Mr. and Mrs. Pierce February 24, 1894, which mortgage was recorded March 14, 1895. A decree of foreclosure was rendered, in which there was found to be due $11,423.38. After the decree, complainant asked to have a receiver appointed. The application was denied.

The defendant the Charles P. Kellogg Company is a judgment creditor of Mr. Pierce, having an execution levy upon the property covered by the mortgage. It defends against the mortgage upon the ground that, previous to extending credit to Mr. Pierce, it inquired of the complainant bank about his standing, and was wrongfully advised by it that Mr. Pierce was of good standing and credit, and claimed to be worth $35,000 or $40,000, and, relying upon such representation, it extended credit to Mr. Pierce. It is also the claim of this company that it was the duty of complainant to advise it of the mortgage it held, but, instead of doing so, it concealed the fact that it had such a mortgage, and the mortgage was in fact, and in legal effect, put to a fraudulent use, and should, in equity, be postponed to the execution levy of the defendant company. The defendant Chamberlain is the sister of Mrs. Pierce. She was the possessor, by inheritance, of some property, which was managed many years by Mr. Pierce. He was indebted to her for nearly $9,000 at the time the mortgage was made. At about the time of his failure, Mr. and Mrs. Pierce deeded the property covered by the mortgage to Miss Chamberlain, who defends against the mortgage, claiming that, during the time the mortgage was not of record, she was ignorant of its existence, and that, if she

had known of it, she would not have intrusted Mr. Pierce so implicitly as she did, but would have secured her indebtedness before the failure of Mr. Pierce made it too late to do so.   She also claims that the inchoate dower interest of Mrs. Pierce is not conveyed by the mortgage, and that, by virtue of the deed to her, she succeeds to it, and it should not have been covered by the decree.   The decree was dated July 27, 1897, and authorized a sale of the premises any time after August 28, 1897, if the amount due was not paid.   It is the claim of Miss Chamberlain that the time in which to redeem was too short. It is also claimed by her that, because of the interest clause in the mortgage, it was usurious.   The complainant and Miss Chamberlain and the Charles P. Kellogg Company have all appealed,—the complainant, from the order of the court refusing to appoint a receiver; and the others, from the decree.

It is urged that the bank was not authorized, under the national bank act, to extend credit based upon security upon real estate, and that the credit to Mr. Pierce was based upon the mortgage sought to be foreclosed, and for that reason the mortgage is void.   The testimony in relation to the circumstances under which the mortgage was given, and the time when it was to take effect, is conflicting; but, conceding that the credit was extended because of the security offered by the mortgage, it does not follow that the mortgage is void.   If the bank, in taking this security, has violated any of the provisions of the banking act,—a question about which we do not express any opinion,—it may be a reason why the governmental authorities should interfere and forfeit the charter of the bank, but it does not invalidate the mortgage.   The authorities are very clear upon this proposition.   *National Bank* v. *Matthews*, 98 U. S. 621; *Butterworth & Lowe* v. *Kritzer Milling Co.*, 115 Mich. 1.

In our view of the case, it does not become necessary to decide whether the mortgage became a present mort-

gage at the time of its execution, or whether it did not become a completed mortgage, by delivery, until the day when it was put upon record. It is very evident from the testimony that Miss Chamberlain was not influenced either one way or the other, in her dealings with her brother-in-law, by the withholding from the record of the mortgage. She had confidence in Mr. Pierce, and for more than 20 years she allowed him to manage and use her money, without questioning his ability and willingness to take care of her interests. The deed which she accepted, and through which she holds title, is a warranty deed, except as to two mortgages, one of which is the one involved in this litigation. We do not mean to intimate that this mention of the mortgages in the deed estops Miss Chamberlain from contesting their validity, but, taken in connection with the entire proceedings between her and Mr. Pierce, it shows that she relied wholly upon him to take care of her interests.

As to the effect of the withholding of this mortgage from the record upon the claim of the Charles P. Kellogg Company, they do not base their claim to relief, in their cross-bill, upon the fact that the mortgage was void against them as subsequent creditors. The ground for relief stated by them is that Mr. Pierce desired credit; that, before extending it to him, they inquired of the complainant about his financial condition, and—

"Asked it to state fully all his circumstances; and complainant, about March 2, 1894, wrongfully advised this defendant that said E. S. Pierce was of good standing and credit, and claimed to be worth $35,000 to $40,000; that defendant believed and relied upon said representation, as complainant intended it should, and sold and delivered said Pierce, on credit, goods to the amount and value of $799.50; that it was the duty of complainant to disclose said mortgage, but it concealed the same from the defendant, and defendant did not know of the same until after said credit was extended."

It is important to ascertain from the record whether the allegation of the cross-bill is sustained by the proof. The inquiry made of the bank was as follows:

"CHARLES P. KELLOGG COMPANY.
"CHICAGO, March 1, 1894.
*"Dear Sir:* E. S. Pierce, Grand Rapids, Michigan:
We would thank you for any information that will enable
us to form a correct opinion of capital, character, prompt-
ness, responsibility, etc.

"Your reply herein will be considered strictly confiden-
tial.

"Yours truly,
"CHARLES P. KELLOGG COMPANY."

The above was all printed. It was addressed to the
complainant bank. On the same piece of paper the cashier
of the bank wrote as follows: "He is of good standing
and credit, and claims to be worth $35,000 to $40,000."
The credit man of the Charles P. Kellogg Company did
not content himself with this reply, but consulted Brad-
street's report, which gave the business history of Mr.
Pierce; and, among other things, it stated, "We are
informed that he claims to be worth $35,000, net, at the
present time." Then followed a statement of his property,
and the report continued, "He is not supposed to have
much ready means, and we are informed that at least
part of the capital which he will use in this business will
be borrowed." And the report spoke well of him person-
ally, and of his reputation. R. G. Dun & Co.'s report
was also consulted. This report was a detailed one, and,
among other things, said, "It is not believed that he
requires any further introduction to the trade, and is held
safe for his business engagements, upon an estimated
worth of from $30,000 to $35,000 clear." A printed
inquiry like the one sent to complainant was addressed to
four other banks at Grand Rapids. One of them replied:
"We cannot speak too highly of Col. Pierce's character
and promptness. We cannot give you reliable informa-
tion as to capital, but consider you may rely on the repre-
sentations he makes." The National City Bank replied,
among other things: "On inquiry, I learn that Mr. E. S.
Pierce is regarded worth about $30,000. He stands well
as to character." Inquiries were also addressed to the

lawyers of the defendant, one of whom replied, under date of March 3d, saying, among other things: "He is probably worth $25,000. He has a good reputation, has always paid his debts, has a good credit, and we think he is a good business risk at present. * * * However, we think he will be able to meet his obligations for a time." The other one, under date of March 10th, wrote defendant, among other things: "I should advise, in giving credit, to ask for a personal statement from Mr. Pierce." Inquiry was also made of the Michigan Trust Company. The inquiry sent to the complainant was the same as the one sent to the others. After receiving these answers, in the spring of 1894, goods were shipped to Mr. Pierce, all of which were subsequently paid for. With the exception of a bill of goods valued at $42, shipped August 1, 1894, upon a credit of four months from December 1, 1894, all of the goods embraced in the judgment were sold after October 20, 1894. A large proportion of them were sold as late as March, 1895. There was nothing in the inquiry addressed to the complainant which made it incumbent upon it to send a reply; but, as a matter of courtesy, it did the same as the other banks,—it sent a reply. There is nothing in the record to show that its reply was not according to the fact, or that it was intended to deceive. To hold a bank liable for replying to an inquiry under the circumstances shown by this record would make it exceedingly hazardous for it to reply to any such inquiries, and would not be in accordance with any principle of law to which our attention has been called. See *First Nat. Bank* v. *Marshall & I. Bank*, 108 Mich. 114, and the many cases there cited; *Potts* v. *Chapin*, 133 Mass. 276.

It is the claim of defendant Chamberlain that there was no such delivery of the mortgage as to make it a valid mortgage as to Mrs. Pierce, and that her dower interest was not conveyed. The record discloses that the mortgage was executed by both Mr. and Mrs. Pierce. According to one theory of the case, it was then delivered, so as

to become a present mortgage.  According to the other theory, it was to be delivered and put upon record when Mr. Pierce consented that it should be done.  Mr. Pierce gave his consent to its delivery and recording.  Which-ever theory is adopted, we think it clear that Mrs.' Pierce consented to the delivery of the mortgage, and that by her joining in the execution of it, and its subsequent authorized delivery, her inchoate dower right was alienated.

The mortgage contained a provision that deferred installments of interest should become principal, and draw interest at 10 per cent.  It is claimed that this provision made it a usurious contract, and that payment of interest upon such a contract cannot be enforced; counsel citing Act No. 156, Pub. Acts 1891.  An inspection of the original mortgage shows it to have been drawn upon a printed blank, in which, wherever the rate of interest is mentioned, it is described as being at the rate of 10 per cent.  In all other portions of the mortgage, except the clause referred to, the printed word "ten" was stricken out, and the figure "7" was written in.  The scrivener swears that the failure to make the change in the interest clause was a clerical error; that the agreement was for interest at 7 per cent.; and that, to carry out the intention of the parties, the word "ten" should have been, and was intended to be, stricken out, and the figure "7" written in the place of it.  We think this was such a mistake as could be corrected in this proceeding.  The court below figured interest at the rate of 7 per cent., and in doing so, we think, carried into effect the intention of the parties to the mortgage.

It is said that the court did not allow a reasonable time in which to redeem, and counsel cite *Detroit Savings Bank* v. *Truesdail*, 38 Mich. 430.  In that case the decree provided that the amount due, $110,000, should be payable forthwith.  In this case the amount secured by the mortgage was all due in September, 1895.  This case was commenced in October, 1895.  The decree was not taken until July, 1897.  Under these circumstances, we

cannot say that the time given in the decree in which to redeem was unreasonable.

On the part of the complainant, it is urged that the court erred in refusing to appoint a receiver. It is said that Miss Chamberlain does not intend to pay the incumbrances upon the property, and that she should not be entitled to the rents and profits. Counsel cite *Belding* v. *Meloche*, 113 Mich. 223. This case was a foreclosure of a land contract, wherein it was agreed that, in case of a default, the grantor should be entitled to possession. It is shown by the opinion that a different conclusion would have been reached had it been a proceeding to foreclose a mortgage. See 2 How. Stat. § 7847; *Wagar* v. *Stone*, 36 Mich. 364.

We think the decree of the court below should be affirmed. As all the parties in this court are appellants, no costs will be allowed.

The other Justices concurred.