JACOBS *v.* QUEEN INSURANCE COMPANY OF AMERICA.

1. EVIDENCE—ADMISSIONS—FRAUD—ASSIGNMENT.

Declarations of fraudulent intent, made by a vendor after the sale and transfer of the subject-matter, are not admissible against the title of the purchaser, as the transferror is not allowed to disparage a title with which he has already parted.

2. SAME—INSURANCE—CONFESSION—HEARSAY.

Where the proceeds of a policy of fire insurance covering a stock of merchandise were assigned to the creditors of the insured to satisfy their claims against the assignor, and on the trial of an action by them against the insurer it was sought to show that one of the vendors had, subsequent to the assignment, admitted his participation in an attempt to burn the property covered, the trial court properly excluded the evidence as incompetent.

3. SAME—TRIAL—FORMER CONVICTION.

The trial court has a considerable latitude on cross-examination in permitting questions that are calculated to elicit any information as to the past life and conduct of a witness, and it was not erroneous to permit the plaintiff, in an insurance action, to inquire into alleged former indictments of or charges against one of the important witnesses of the defense although they had not resulted in a conviction.

4. INSURANCE—CONDITIONS PRECEDENT TO SUIT.

In an action on a policy of fire insurance it was not a defense to the liability of insurer that no demand had been made for an appraisal, as required by the conditions of the policy, until after the commencement of an action which was later discontinued, the demand being then made and a new suit instituted.

5. SAME—AGENCY—FRAUD—ADMISSIONS.

Evidence was not receivable that the insured confessed arson to a witness who was claimed to be agent of the plaintiffs, assignees, where the testimony was insufficient to establish the relationship of principal and agent.

6. SAME—FRAUD—CHARGE.

There was no error on the part of the trial court in

charging the jury that in order to defeat a recovery on the policy the defendant must establish by a preponderance of the evidence that the members of the insured firm committed a gross, wilful, and intentional fraud and committed the crime of perjury in relation to the persons constituting their partnership, since the defense of fraud or false swearing requires actual fraud as a basis and there must be evidence of fraudulent or criminal intent.

Error to Wayne; Hally, J. Submitted October 26, 1916. (Docket No. 168.) Decided March 29, 1917.

Assumpsit by Charles L. Jacobs and Alexander Friedman, copartners as Jacobs & Friedman, against the Queen Insurance Company of America upon a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Stevenson, Carpenter, Butzel & Backus* (*Thomas G. Long, J. W. Mooney,* and *R. M. Edmonds,* of counsel), for appellant.

*Selling & Brand,* for appellee.

STONE, J. This is the second appearance of this case in this court. When here before a full statement of the essential facts was made, and will be found reported in 183 Mich., at page 512 (150 N. W. 147).

Upon the first trial a verdict was directed for the plaintiffs, the court leaving to the jury merely the question of damages. In this court the judgment was reversed and the case sent back for a new trial, because of error in the failure of the trial court to submit to the jury the question whether the membership of Harry Friedenberg in the firm of D. Littman & Co. had been fraudulently concealed from the insurers, when the several policies were applied for. The case has again been tried, resulting in a verdict and judgment for the plaintiffs. It appeared upon the trial that upon December 19, 1910, four days after the fire,

the policy in suit and two others were assigned by D. Littman & Co. to the plaintiffs for the purpose of securing the pre-existing indebtedness due the plaintiffs from the assured, and to pay some other specified debts of D. Littman & Co., and the balance, if any, to be returned to D. Littman & Co. The amount of the policy in suit was not sufficient to meet the demands to be paid by the assignees, and leave any balance for D. Littman & Co. After this assignment was made one of the assured went to Chicago and engaged the services of one Joseph Clarke to assist in adjusting the loss. Clarke and one of the assured went to Detroit, and after a day or two of negotiations Clarke and said Friedenberg returned to Chicago. On arriving there, and on or about December 22, 1910, it is the claim of the defendant that Friedenberg made a full statement by way of confession of the various acts committed by him for the purpose of collecting the insurance, and went into details in describing the manner in which he and his associates fired this building and destroyed it, together with the stock therein, for the purpose of collecting the insurance. This statement was reduced to writing, and it is the claim of the defendant that it was knowingly and deliberately signed by said Friedenberg, and sworn to on or about December 23, 1910. It appears that thereafter the man Clarke was sent to prison upon conviction of the crime of arson, and was later paroled. After his release on parole the so-called confession came into the hands of the insurance companies. This alleged confession appeared in the former record and was used as the basis of a motion for a new trial. Upon the last trial of the case the said Friedenberg was cross-examined at length in regard to said statement, he denying that he had made it or knowingly signed it, and said alleged confession was at first admitted in evidence as substantive testimony. Later, however,

and before the close of the case, the court held that, inasmuch as the statement was signed by Friedenberg after the present plaintiffs had become the owners of the policy in their own right and in the right of other creditors, the document could not be used as substantive evidence, and could only be used for purposes of impeachment. The ruling of the trial court in this regard was duly excepted to by the defendant, and it raises what, in our judgment, is the principal question in the case.

There was a motion for a new trial entered by the defendant, raising this and many other questions, some of which will be referred to in their order. The learned circuit judge, in denying the motion for a new trial, stated substantially that upon this question he relied upon the following decisions of this court: *Blanchard* v. *Moors,* 85 Mich. 380 (48 N. W. 542); *First Nat. Bank* v. *Bank,* 108 Mich. 114 (65 N. W. 604); *Vyn* v. *Keppel,* 108 Mich. 244 (65 N. W. 966); *Muncey* v. *Sun Insurance Office,* 109 Mich. 542 (67 N. W. 562).

The reasons for the refusal of a new trial were duly excepted to by the defendant, who has brought the case here upon writ of error, there being 88 assignments of error in the case. We shall not undertake to consider each one of these assignments of error, but shall attempt to follow appellant's points, which we find to be somewhat overlapping and confusing.

1. We shall consider first the rights of the plaintiff as assignees after the fire of the policy in suit, and this may be considered in connection with the question that is discussed whether the plaintiffs were *bona fide* transferees for value of the policy in suit. It was our impression upon the oral argument of the case that it should be disposed of upon our own authorities. Since an examination of the record and the briefs, and the spending of considerable time in examination of

the authorities, we are still of the opinion that upon this question we need not go outside of our own decisions to dispose of it. The authorities cited by the trial judge in the denial of the motion for a new trial, we think, are controlling in the case. Others of our cases might be added. It is urged with a great deal of earnestness by the appellants that, because it appeared that D. Littman & Co. might have a contingent interest in the remaining proceeds, if any, of the policies assigned to the plaintiffs, after the payment of the specific debts enumerated, the rule invoked by the trial judge should not apply. An examination has satisfied us that there is no merit in this claim. In fact, it may be said that the entire question, in our judgment, is foreclosed by the case of *Muncey* v. *Sun Insurance Office, supra.* In that case a policy of fire insurance was assigned to secure a pre-existing indebtedness of the assignor to the assignee. An examination of the printed record in that case discloses the fact that the assignment contained the following language:

"To enforce and collect the amount due upon said policy in all ways as fully as I myself could do; it being understood that any surplus remaining upon the amount collected from said policy after deducting my indebtedness to said Casper M. Zengerle is to be returned to me.

[Signed]   "HENRY BOUTYETTE."

This brings the case where it may be said it is "on all fours" with the instant case. Undoubtedly, on December 19, 1910, when the policies were assigned to the plaintiffs, the latter took them in the plight they were in, and any admissions or confessions made by the insured prior to that time could have been shown as substantive testimony in the case; but, in our opinion, after the title to these insurance policies was vested in the plaintiffs in their own right, and in the right of creditors whose *bona fide* claims exceed by a large amount the amount of the policy here in suit,

the right of plaintiffs in these policies could not be in any way defeated or impaired by any admission or confession made by the assignors or any of them, in the absence and without the consent of the plaintiffs. We have examined the authorities cited by counsel upon both sides in other jurisdictions. We shall not cite them for the reason already stated, but will say in passing that, in our opinion, the doctrine above announced is supported by the great weight of authority. This subject is covered by a note to the case of *Johnston* v. *Spoonheim* (19 N. D. 191), reported in 41 L. R. A. (N. S.), said note commencing on page 20. Under the proposition that ordinarily the declarations of fraudulent intent made by the vendor after the transfer are not admissible as against the vendee to affect his title more than 100 cases are cited.

Counsel for defendant seem to claim that a distinction should be made because it is said that the defendant does not here attempt to affect the title of the plaintiff to the policy in question. It certainly by this evidence attempts to disparage and destroy the validity of the policy. We do not think there is any merit in the attempted distinction. The attempt is made to entirely destroy the validity of the policy.

Many of the text-books make statements to the effect that admissions are not to be received as to the title of either real or personal property if made after the sale, as the vendor cannot disparage a title with which he has already parted. Of course, where there is a conspiracy or collusion or combination to destroy with which the plaintiff is connected, the rule would be otherwise. But there is no such claim here. The rule may be stated broadly to the effect that declarations of assignors, grantors, devisors, and others through whom title is claimed are incompetent if made after the title or interest in the property in question has passed from them. This rule does not apply to

persons who hold merely in a representative capacity, as administrators, assignees in bankruptcy, and assignees for the benefit of creditors. The distinction is plainly pointed out in numerous cases, and upon that subject it may be said that the cases of *Wyckoff* v. *Carr*, 8 Mich. 44, and *Koch* v. *Lyon*, 82 Mich. 513 (46 N. W. 779), cited by defendant, are to that effect. As was said in *Koch* v. *Lyon, supra,* "the defendant was in the case acting only in a representative capacity." Under our statute an assignee for the benefit of creditors, may be said to represent the assignor and the creditors, and has been in some cases termed the agent of the assignor. He has no interest in the fund, but to administer it in the manner pointed out by the statute. His relation is a very different one from that occupied by the plaintiffs in this case, who were themselves creditors and had an interest in this fund, and may be said to have been purchasers for value. Counsel for defendant say this is a dangerous doctrine and may open the door to many frauds. In our opinion, to hold that the declarations of an assignor made after execution of the assignment might be received to destroy the validity of the chose in action assigned would be, as one court has said, against reason and against law.

"No man's property would be safe and titles would be thrown into confusion, if declarations of a grantor, out of possession, * * * could be received as evidence against his grantee." *Lent* v. *Shear*, 160 N. Y. 462 (55 N. E. 2).

A grantor would have it in his power, by collusion with a real or fictitious creditor, or other party, to deprive his grantees or his assignees of their property, by a species of proof which it might be difficult, if not impossible, to rebut. 1 R. C. L. p. 525, § 66, under head of "Admissions and Declarations."

2. Upon the subject of Friedenberg's membership

in the insured firm, an examination of the record will show that the subject was fairly submitted to the jury, together with special questions skillfully framed and propounded by the defendant, the answers to which, we think, have foreclosed the defendant upon this question, unless it can be said that the overwhelming evidence in the case was to the contrary. We are unable to say this in view of the entire record.

3. Alleged errors in permitting questions on cross-examination of defendant's witnesses as to the indictments of Joseph Clarke, which did not result in conviction, etc. We do not feel like spending much time upon this question. The rule is well stated in the case of *Beebe* v. *Knapp,* 28 Mich. 53. In that case this court, speaking through Mr. Justice CHRISTIANCY, said:

"On cross-examination the trial court must be allowed considerable latitude of discretion in permitting questions calculated to elicit any information as to the past life and conduct of the witness, and to enable the jury to see 'what manner of man he is'; and it is held not erroneous in this case to have permitted certain questions of this character, although in the opinion of this court it would have been a wiser exercise of discretion to have excluded them."

Attached to the report of this case is an elaborate note referring to many cases, an examination of which will show that no error was committed by the trial court in this regard.

4. Appraisal not demanded. It seems that plaintiffs' counsel, relying upon the Michigan rule, had commenced an action upon this policy without demanding an appraisal, thinking that was not a condition precedent to the beginning of the suit. On examining the plea filed in the former suit they discovered that an appraisal was a condition precedent to the bringing of suit under the Ohio decisions which were controlling here. Almost immediately thereupon plain-

tiffs (in a letter signed by the plaintiffs and the insured, as well as by counsel) demanded an appraisal and named a certain person as appraiser upon their part. The defendant refused and declined to enter into an appraisal at that time, saying that the demand came too late. The former suit was discontinued, and a new suit brought within the proper time. We think this question is fully covered by the cases following: *Schrepfer* v. *Insurance Co.*, 77 Minn. 291 (79 N. W. 1005), and *Johnson* v. *Insurance Co.*, 69 Mo. App. 226. The latter case seems to be almost parallel. The same ruling appears to have been had in the case of *McNees* v. *Insurance Co.*, 69 Mo. App. 232.

5. It is also urged by defendant's counsel that Clarke represented and was the agent of the plaintiffs, and that, the alleged confession having been made to Clarke, it was notice to the plaintiffs. Upon this record we cannot say that at the time of the alleged confession there is any evidence of such agency.

6. It is also claimed that the trial court erred in charging the jury that:

"In order to defeat a recovery upon this policy the defendant company must, by a preponderance of the evidence, establish that the members of the firm of D. Littman & Co. committed a gross, wilful, and intentional fraud and deliberately committed the crime of perjury with relation thereto; otherwise your verdict must be for the plaintiff."

In view of the claimed defense set up in the pleadings, we do not think there was any error in this part of the charge. The defense was not based on any constructive fraud, but actual, intentional, wilful, and criminal fraud. This court held in *Brunswick-Balke-Collender Co.* v. *Assurance Co.*, 142 Mich. 29 (105 N. W. 76), that the defense of fraud or false swearing must be based upon actual fraud and requires proof of fraudulent intent, and the authorities are there cited.

The other questions relating to examination under oath not subscribed, the duplicate bills and invoices not produced, were fully covered and submitted by the charge of the trial court. We regret that we do not feel justified, because of its length, to copy into this opinion the entire charge of the trial court in this case. We think it very fully and fairly covered the entire case.

We have examined all of the other questions discussed by counsel with great care, and are satisfied that there is no reversible error in the record.

The judgment of the court below is therefore affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.