Joseph B. DANZIGER, et. ux., Appellants,

v.

SAN JACINTO SAVINGS ASSOCIATION, Appellee.

No. 01–84–0701–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 16, 1986.

Rehearing Denied April 3, 1986.

Michael C. O'Connor, O'Connor, Wisner & Craig, Houston, for appellants.

Gregory N. Jones, Hill, Parker, Franklin, Cardwell & Jones, Houston, for appellee.

Before JACK SMITH, DUGGAN and HOYT, JJ.

## OPINION

JACK SMITH, Justice.

This is a usury suit filed by the appellants claiming violations of the Texas Consumer Credit Code and the Federal Truth-In-Lending Act. The trial court held that the appellee had not contracted for, charged, or received usurious interest and had not violated the Federal Truth-In-Lending Act. A take-nothing judgment was entered.

The appellants made arrangements with the appellee to enter into a contract for a home improvement loan. On August 5,

1980, the promissory note and other papers attendant to the loan were executed. All of the instruments were dated August 5 except the promissory note which was dated July 30.

The contract provided for a 180 month home improvement loan in the principal sum of $39,350. The 8 percent add-on interest computed to 12.34 annual interest or the sum of $47,217.40. The promissory note provided that it could be prepaid at any time and a rebate of any unearned finance charges would be made under the Rule of 78's. At the time the contract was executed, the appellee's loan officer informed the appellants that the loan proceeds would be escrowed.

The first advance to the contractor was made on August 5, 1980, and the last advance was made on June 25, 1981.

On approximately May 18, 1982, the appellants requested a written payoff quote on the loan. The appellee showed the amount at $38,941.55; however, the appellants did not attempt to pay off the note.

In their second point of error, the appellants contend that there is no evidence or insufficient evidence to support the trial court's finding that the loan proceeds were placed in an escrow account for the appellants' use and benefit. Alternatively, they contend that the trial court erred in holding as a matter of law that any such account was bona fide since the appellee had sole control over the loan proceeds until they were actually advanced to the appellants or their contractor.

The only evidence in the record regarding the existence of an escrow account came from Mr. Danziger, who testified that the appellee's loan officer had told him that the money would be placed in escrow. He further testified that on the day he signed the note, he knew that the proceeds would be transferred into an account that was to be used for the appellants' home improvements.

 To prevail in the instant case, it was incumbent upon the appellants to prove that there was (1) a loan of money, (2) an absolute obligation that the principal be repaid, and (3) an exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). In the instant case, the appellants are alleging that there was not an escrow account. Accordingly, it was their burden to disprove the existence of such an account. Since the only evidence in the record is the testimony of the appellant, which tended to show that there was an account, the appellants have failed to meet their burden. If a party has the means and opportunity to disprove testimony, and fails to do so, then that party may be bound by the testimony. *Walker v. Ross*, 548 S.W.2d 447, 453 (Tex. Civ.App.—Fort Worth), *writ ref'd n.r.e. per curiam*, 554 S.W.2d 189 (Tex.1977).

The appellants alternatively argue that the appellee was not entitled to accrue interest because the appellee had control over the money. The record does not support this allegation. After the loan proceeds were escrowed, periodic disbursements were made, rather than a lump sum payment to the contractor, to insure that the contractor's work was satisfactory. The appellee would not approve an advance until there had been an inspection of the premises to verify that the contractor's work was satisfactory and had been performed as stated by the contractor. The appellants agreed to this procedure. The contractor testified that the appellants were happy with this arrangement, notwithstanding their testimony to the contrary.

 The appellants reliance on *First State Bank v. Miller*, 563 S.W.2d 572 (Tex. 1978) is misplaced. In *Miller*, the bank made a loan, placed the loan proceeds in the borrower's account, and then froze $14,000.00 of the loan proceeds to insure repayment of interest on the loan. The bank then continued to lend the frozen $14,000.00 to other bank customers. The Texas Supreme Court held that since the money was "frozen" in the borrower's account, it should be deducted in determining the amount of the principal. *Id.* at 573–77.

The *Miller* decision was based upon the fact that the bank had exercised control over and had use of the frozen funds; not the fact that they were placed in escrow. *Id.* at 573. In the instant case, there is evidence that the appellants, because of the terms of the construction contract, had the use of the borrowed money, and there is no evidence that the appellee used the money on loans to other bank customers.

■ Finally, the appellants contend that the appellee's argument, that interest should not accrue on the loan proceeds because they were placed in an escrow account, completely contradicts the appellee's complicated procedure to rebate interest accrued on loan proceeds that were not advanced. This conclusory statement by the appellants has not been developed. Since no specific facts have been recited or cases cited to support the contention, we consider this argument waived. Tex.R. Civ.P. 414.

The appellants' second point of error is overruled.

In their first and third points of error, the appellants contend that the appellee had contracted for and charged usurious interest as a matter of law. They also contend that there is no evidence or insufficient evidence to support the trial court's finding of fact and conclusion of law that the appellee had not contracted for and charged interest in excess of 8% add-on per annum.

The parties agree that the loan in the instant case was made under the authority of the Texas Consumer Credit Code. Tex. Rev.Civ.Stat.Ann. art. 5069–5.01 (Vernon 1971). They also agree that since there was already a purchase money mortgage on the appellants' home at the time the loan was made, the instant loan was a "secondary mortgage loan" as defined in Art. 5069–5.01. They further agree that Art. 5069–5.02 permits an add-on interest charge on a secondary mortgage loan in the amount of $8.00 per $100.00 per annum for the full term of the loan. Tex.Rev.Civ. Stat.Ann. art. 5069–5.02(2) (Vernon 1971). The parties initially disagreed on the construction to be placed on Art. 5069–5.02(2). That section of the article states as follows:

(2) [i]nterest authorized in Section (1) of this Article shall be computed on the cash advance at the time the loan is made for the full term of the loan contract notwithstanding the requirement of the loan contract for payment in substantially equal regular monthly installments and shall be computed on the basis of a full month for any fractional period in excess of fifteen days. Interest authorized by Section (1) of this Article shall be added to the cash advance and said sum shall be the amount of the loan.

The appellants construe Article 5069–5.02(2) to authorize only a single advance loan with interest to be calculated only as specified in sec. (1) of Article 5069–5.02. They characterize the loan in the instant case as a multiple advance loan and allege that it is in clear violation of Chapter 5. On the other hand, although the appellee does not dispute that this section authorizes only single advancement loans, it does take issue with the appellant in characterizing the loan as a multiple advance loan.

Interest authorized under section 1 of the article is computed on the cash advance at the time the loan is made for the full term of the loan contract. The term "cash advance" is defined in the Code as the amount of cash or its equivalent that the borrower actually receives, including that which is paid out at his direction or request, on his behalf, or for his benefit. Tex.Rev.Civ.Stat.Ann. art. 5069–2.01(g) (Vernon 1971).

The evidence adduced at trial shows that the appellants were interested in making improvements to their home. On July 18, 1980, the appellants entered into a contract with Thomas M. Lammers to make such improvements for a total price of $39,-350.00. The agreement stated: "terms of the contract were 10% down. Draws to cover labor and materials, less 10% as required, balance upon completion and final approval by owners."

Thereafter, the appellants contacted the appellee and made arrangements for the loan that is the basis of this lawsuit. Although the promissory note signed by the appellants is dated July 30, 1980, the parties all agree that the loan was consummated on August 5, 1980. The explanation for the note being dated July 30, 1980, is that such is the date the documents were prepared or it is the date that the person who prepared the documents was told that they were to be executed. According to the mechanic's and materialman's lien executed by the appellants and Mr. Lammers, the appellee, at the special instance and request of the appellants, was to pay the loan proceeds to the contractor in accordance with the plans and specifications agreed upon between the parties in the contract dated July 15, 1980.

▆▆▆ We conclude that when the loan proceeds were placed in the escrow account, with the appellants acknowledging the receipt of the funds and giving instructions as to the manner in which they were to be paid out, that this constituted a "cash advance" as defined in Article 5069–2.01(g). We further conclude that the loan was not a multiple advance loan, as contended by the appellants, but was a single advance loan with periodic payments to be made to the contractor pursuant to the payment method agreed to by the appellants in the construction contract.

▆▆▆ The appellants also contend that the failure to make the first advance until six days after the note was executed makes the contract usurious. As heretofore noted, all the parties agree that the execution of the note, the materialman's liens, and the other instruments took place on August 5, 1980. Although the trial court found that the loan proceeds were escrowed on July 30, 1980, we can find nothing in the record to support the court's finding that the money was escrowed on that date. As heretofore stated, the burden of proof is upon the appellants to show that the funds were not escrowed or if escrowed, the date the escrow account was opened. They have failed to meet their burden.

The appellants also contend that the appellee violated the provisions of Chapter 5 in attempting to credit back excess interest. They argue that other chapters in the Code contain sections which permit a creditor to compute interest or time price differentials under other methods or formulas as long as the effective yield is not usurious; whereas, Chapter 5 is silent on the matter. *See* Tex.Rev.Civ.Stat.Ann. arts. 5069–3.-15(1), (3), 4.01(1), (2), 5.02(1), 6.02(9)(a), (b), (c), 7.03(1), (2), (3) (Vernon 1971). Chapter 5 neither prohibits nor permits the appellee's crediting procedures, and was recently amended to provide that:

> On any loan made under the authority of this Section, the lender may contract for, charge, or receive interest charges at a simple annual rate not in excess of a rate, considering the entire term of the loan, permitted in Section (1) of this Article. The interest contracted for, charged, or received shall not be precomputed but shall be accrued and earned by applying the simple annual interest rate under the loan contract to the principal balance, including additions to principal subsequent to the loan contract, from time to time unpaid until the date of payment in full or demand for payment in full.

Act of Aug. 26, 1985, ch. 659, sec. 3, 1985 Tex.Sess.Law.Serv. 5001, 5003 (Vernon). This amendment was enacted subsequent to the loan made in the present case.

We find no authority to support the appellants' conclusion, and the appellants have cited none. Article 5069–5.02 specifically states that interest authorized under this Article shall be computed on the cash advanced at the time the loan is made for the full term of the loan contract. This is what occurred in the instant case. Article 5069–1.07(a), which applies to loans secured by a lien or any interest in real property, provides:

> (a) On any loan or agreement to loan secured or to be secured, in whole or in part, by a lien, mortgage, security interest, or other interest in or with respect to any interest in real property, determina-

tion of the rate of interest for the purpose of determining whether the loan is usurious *under all applicable Texas* laws shall be made by amortizing, prorating, allocating, and *spreading*, in equal parts during the period of the full stated term of the loan, all interest at any time contracted for, charged, or received from the borrower in connection with the loan. However, in the event the loan is paid in *full* by the borrower prior to the end of the full stated term of the loan and the interest received for the actual period of the existence of the loan exceeds the maximum lawful rate, the lender contracting for, charging, or receiving all such interest shall refund to the borrower the amount of the excess or shall credit the amount of the excess against amounts owing under the loan and shall not be subject to any of the penalties provided by law for contracting for, charging, or receiving interest in excess of the maximum lawful rate. (emphasis added).

Tex.Rev.Civ.Stat.Ann. art. 5069–1.07(a) (Vernon Supp.1985).

Article 1.07(a) adopted the spreading doctrine set forth in the *Nevels* Rule.[1] Applying the *Nevels* formula to the present case, we take the loan proceeds ($39,350.00) multiply it by the rate of interest (8% add-on), and multiply that sum by the term of repayment (15 years). These computations amount to $47,220.00, which is the maximum amount of interest allowed on the loan in the present case. As heretofore noted, the appellee was charged $47,217.40 which is $2.60 less than the maximum rate. The spreading doctrine is firmly established in Texas. *See First State Bank v. Miller*, 563 S.W.2d 572 (Tex.1978); *Tanner Development Co. v. Ferguson*, 561 S.W.2d 777 (Tex.1977); *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937). In *Tanner* the Texas Supreme Court stated that Article 1.07(a) "adopt[s] the *Nevels* doctrine of spreading all interest over the whole term

of loans secured by real property, whether it be "interest in advance," "front end interest," or a mixture of both." *Tanner Development Co.*, 561 S.W.2d at 786.

■ In the instant case, the appellee spread the interest over the entire term of the note as provided in Article 1.07(a). After the loan proceeds were escrowed, the appellee disbursed the advances to the contractor pursuant to the terms of the appellant's contract with the contractor. These advances occurred over a period of approximately 10 months. Although the appellee was not compelled by the terms of the note to credit the appellants for unearned interest during the 10 month period of the disbursements, it did so in the sum of $1,117.62. By giving this credit to the appellants, the note would be paid off in the 168th or 169th month rather than the 180th month as provided in the note.

The appellants claim that since the note would be paid off in the 168th or 169th month, this made the interest charged by the appellee usurious. The appellants offered into evidence the testimony of Edgar L. Scott, Assistant Commissioner of the Office of the Consumer Credit Commission in Texas. It was his opinion that the procedure for making the loan in the instant case was wrong and that there was an overcharge of $5,252.96. However, this same witness pointed out that his opinion was based on somewhat limited information in that he had not reviewed any of the allegations or positions submitted by the appellee. The effect of his testimony was that whether the method of computation used by the appellee was permissible would depend upon whether the appellants had use of the funds. Mr. Scott also testified that a rebate of unearned finance charges computed under the rule of "78's" was the proper procedure.

Although the appellee sent a letter to the appellants that stated an incorrect amount still owing on the note, we find this imma-

---

1. The *Nevels* Rule is a process whereby a lender takes the amount of the loan proceeds, multiplies it by the allowable rate of interest per year, and then multiplies by the term for repayment.

The aggregate amount is the maximum amount of interest a party is entitled to charge. *Nevels v. Harris.* 129 Tex. 190, 196, 102 S.W.2d 1046, 1049 (1937).

terial because the appellant Joseph B. Danziger testified that the note was still in effect, that he did not intend to make an early payoff, and that the appellants did not seek to rescind the loan contract.

In considering the record in its entirety, we hold that there is sufficient evidence to support the trial court's finding that the contract was not usurious. The appellants' first and third points of error are overruled.

In their fourth and final point of error, the appellants contend that as a result of the appellee's violations of the Federal Truth-in-Lending Act, they are entitled to damages and a rescission of the contract as a matter of law. They assert that there is no evidence or insufficient evidence to support the trial court's conclusion of law that the Truth-in-Lending Act was not violated and the trial court's finding of fact that the appellants did not seek to rescind the loan contract.

Initially, the appellants contend that the appellee violated the Truth-in-Lending Act by failing to disclose the appropriate finance charge in the note. The Truth-in-Lending Act and Regulation Z require that the appellee disclose, in writing, the amount of its finance charge as well as other elements of the transaction. 15 U.S.C.A. sec. 1639 (West 1982), *repealed by* Act of Mar. 31, 1980, Pub.L. No. 96–221, 94 Stat. 180 (1982); 12 C.F.R. sec. 226.8(b)(c) (1982).

The appellants contend that the appellee's failure to notify the appellants in writing of its crediting procedures was a violation of the Truth-in-Lending Act. The record reveals that a loan officer orally informed the appellants of its crediting procedure. The appellants have not controverted this fact. The record further shows that all the information contained in the Truth-in-Lending Act was disclosed on the face of the note that the appellants signed. Thus, the only failure of the appellee in complying with the Truth-in-Lending Act was to get a signed statement by the appellants that full disclosure had been made.

Regulation Z begins by stating the purpose of the act, which is:

To assure that every customer who has need for consumer credit is given meaningful information with respect to the cost of that credit which, in most cases, must be expressed in the dollar amount of finance charge, and as an annual percentage rate computed on the unpaid balance of the amount financed.

12 C.F.R. sec. 226.1(a)(2) (1980):

Since the appellants do not deny that full disclosure was made orally to them of all the requirements set forth in the Truth-in-Lending Act and do not contend that the terms on the face of the note violate the act, we are of the opinion that the appellee substantially complied with the Truth-In-Lending Act and Regulation Z. We perceive no harm to the appellants by the omission of the appellee in failing to obtain a written acknowledgment from the appellants that they had received such disclosure.

The appellants also contend that there is an overstatement of the finance charge on the face of the note because the appellee knew that credits would later be applied that would alter the disclosed finance charge. This statement is somewhat misleading. There was no absolute assurance that if there were credits on the advances made that such credits would result in an acceleration of the final payment. As heretofore stated, the promissory note made full disclosure of all things required by the Truth-in-Lending Act, and we can find no evidence in the record that the appellee concealed any facts or attempted to circumvent the disclosure requirements.

The appellants' final contention is that they are entitled to rescind the contract. The appellants went to trial on their first amended petition, and the only remedy they pleaded for concerning cancellation was the "cancellation of all usurious interest not yet paid and refund of all usurious interest already paid."

When the appellants attempted to introduce evidence that they wanted to rescind

the transaction, the appellee objected that they had not pleaded for such relief. The trial court sustained the objection and also refused a trial amendment. The appellants also attempted to cure their error by relying upon 15 U.S.C.A. sec. 1635 (West 1982); however, under that statute the term "rescission" is clearly used. The record also reflects that when Mr. Danziger's deposition was taken, he informed the appellee that he did not want to rescind the transaction.

It is well settled that the filing of a trial amendment is within the sound discretion of the trial court, and unless the trial court clearly abused its discretion in permitting or denying the filing of a trial amendment, it is not reversible error. *Burnett v. File*, 552 S.W.2d 955, 957 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). The appellants have not attempted to show that the trial court abused its discretion in refusing the trial amendment.

■ We hold that there is sufficient evidence to support the trial court's conclusion of law that the Truth-In-Lending Act was not violated, and sufficient evidence to support the trial court's finding of fact that the appellants did not seek to rescind the loan contract. We also hold that the trial court did not abuse its discretion in refusing to permit the appellants to file a trial amendment. The appellants' fourth ground of error is overruled.

The judgment of the trial court is affirmed.