Joseph B. DANZIGER Et Ux.,
Petitioners,

v.

SAN JACINTO SAVINGS
ASSOCIATION,
Respondent.

No. C–5308.

Supreme Court of Texas.

May 27, 1987.

Concurring Opinion April 8, 1987.

Michael C. O'Connor, O'Connor, Wisner & Craig, Houston, for petitioners.

Gregory Neill Jones, Hill, Parker, Franklin, Cardwell & Jones, Houston, for respondent.

MAUZY, Justice.

The opinion and judgment of April 8, 1987 is withdrawn and the following is substituted therefor.

This is a usury suit. Joseph and Judith Danziger brought an action against their lender, San Jacinto Savings Association, claiming various actions by San Jacinto constituted usury and, further, that San Jacinto had violated the Federal Truth-In-Lending Act and Regulation Z. In a bench trial, the court held that San Jacinto had not contracted for, charged, or received usurious interest nor had it violated the Federal Truth-In-Lending Act or Regulation Z, and rendered judgment that the Danzigers take nothing. The court of appeals affirmed. 708 S.W.2d 1. We reverse and render in part and remand in part.

The Danzigers entered into a contract with San Jacinto for a home improvement loan in the principal amount of $39,350.00 and an 8% add-on interest which computed to 12.34% annual interest for a total interest charge of $47,217.40 as permitted by Tex.Rev.Civ.Stat.Ann. art. 5069–5.02 (Vernon Supp.1987), bringing the face amount of the note to $86,567.40 to be paid in 180 equal monthly payments. The loan contract provided that the principal amount would be placed in escrow and disbursed by San Jacinto directly to the contractor doing the improvements. The disbursements were to be paid upon San Jacinto's approval of the work in progress.

The Danzigers assert the court of appeals erred in holding that San Jacinto's procedures for advancing loan proceeds in installments and crediting back excess interest does not violate the usury statutes. Interest was charged on the entire amount of the cash advance. At the end of the disbursements, when San Jacinto could calculate how much money had been retained in the escrow account during each payment period, San Jacinto provided a "manual" (handwritten) credit to the account to return interest charged on the money prior to its being disbursed. Chapter 5 of the Texas Consumer Credit Code, art. 5069, provides that the interest "shall be computed on the cash advance at the time the loan is made." Art. 5069–5.02(2) (Vernon Supp. 1987). Based on the definition of "cash advance" in art. 5069–2.01(g) and the language in art. 5.02(2), it is clear that the provisions of Chapter 5 contemplate the date of the loan and the date of disbursement of the cash advanced be the same.

■ We hold it is unlawful for a lending institution to charge interest from the date of the note on the entire principal amount and then credit back the overcharge when the principal amount is disbursed in portions from time to time. Once usurious interest has been charged, the lender cannot purge its action by a subsequent credit. *See Southwestern Investment Company v. Hockley County Seed and Delinting, Inc.,* 516 S.W.2d 136 (Tex.1974). *See also Nationwide Financial Corp. v. English,* 604 S.W.2d 458 (Tex.Civ.App.—Tyler 1980, writ dism'd as moot).

■ San Jacinto's practice of crediting back overpaid interest is insufficient to overcome the violation of the statutes arising from the initial charge of interest on money still held by the lender in an escrow account prior to disbursement. The Legislature has provided for a credit of interest to avoid usurious charges *only* in the instance of pre-payment by the borrower. Tex.Rev.Civ.Stat.Ann. art. 5069–1.07(a) (Vernon Supp.1987). There is no provision for a lender to avoid usury by giving interim credits to rebate interest overcharges. San Jacinto contracted for usurious inter-

est when it contracted for interest on the entire principal, which contract provided for multiple disbursements. The loan contract is clear and unambiguous and permits of no other conclusion.

The Danzigers assert that if this court finds usury, it must necessarily also find double usury, thus invoking the additional penalties of article 5069–8.02 which provides for a return of all principal and interest, paid and unpaid. They insist that since San Jacinto did not disburse any of the loan principal until some time after the date of the loan, and yet contracted for and charged interest commencing on the loan date, that San Jacinto has contracted for and charged in excess of double the amount of legal interest *as a matter of law*. They reach this conclusion on the premise that the legal interest prior to disbursement would be zero, citing the court to *Houston Sash & Door Company, Inc. v. Heaner*, 577 S.W.2d 217, 221 (Tex.1979).

*Houston Sash* has no bearing on the instant case. The interest ceilings, calculations and rules for determination of whether usury has occurred vary, depending on the character of the transaction. *Houston Sash* involves interest on an open account governed by chapter seven of the Credit Code. That chapter clearly provides that no interest may be charged in the first year of the account. Accordingly, the legal interest on such an account in the first year is zero. As 12 percent was charged, the court found the interest charged was in excess of double the amount allowed, (i.e., in excess of twice zero), as a matter of law.

▇ There is no such interest-free period provided by chapter five on which the Danzigers can support a claim of double usury as a matter of law. Instead, for a chapter five transaction, a court must look to the full term of the note and spread the interest over the term of the contract to determine if usury has occurred and the extent of the overcharge. *Tanner Development Company v. Ferguson*, 561 S.W.2d 777 (Tex.1977). The double usury penalties of article 5069–8.02 are levied if simple arithmetic indicates the rate charged is in excess of double the legal rate. *Tri-County*

*Farmer's Co-op v. Bendele*, 641 S.W.2d 208 (Tex.1982). The Danzigers have made no such showing.

▇ Using the Danzigers own calculations, the legal interest formula under chapter five is: principal times 8 percent times term of loan. Application of the relevant figures to this formula clearly indicates the Danzigers' claim of double usury is without merit. If the full amount of principal had been disbursed on the loan date, the legal interest formula would be $39,350 times 8 percent $\times$ 15 years, yielding a maximum interest allowable of $47,220. Double usury, interest in excess of double the amount of legal interest, would entail an interest charge exceeding twice this amount, or, $94,440. While an overcharge of $1,117.62 in interest, due to staggered disbursements, was proved and constitutes usury, it falls far short of an overcharge that would exceed *twice* the legal rate of interest. The Danzigers are not entitled to recover the penalties provided by article 5069–8.02.

The Danzigers next urge that the excessive pay-off quote constitutes "charging" of usurious interest. The Danzigers requested and received a pay-off quote from San Jacinto on May 18, 1982. The evidence is undisputed that this quote reflected an amount due in excess of the amount allowed under the law on the projected pay-off date. San Jacinto claims that a mere pay-off quote does not constitute a "charge" and that a lending institution cannot be said to have "charged" interest in excess of the maximum rate until after the loan is paid off and all accounting has been completed to determine the final charge for interest. San Jacinto argues that since the Danzigers have not paid or attempted to pay off their loan obligation, the Danzigers cannot logically argue that they have been charged excessive interest.

The court of appeals accepted San Jacinto's argument and held "although the appellee sent a letter to the appellants that stated an incorrect amount still owing on the note, we find this immaterial because the appellant Joseph B. Danziger testified that the note was still in effect, that he did

not intend to make an early pay-off, and that the appellants did not seek to rescind the loan contract." 708 S.W.2d at 6–7.

Article 5069, sec. 8.01, Texas Consumer Credit Code, is the penalty provision specifically applicable to lenders. It provides: "(a) Any person who violates this Subtitle by *contracting for, charging or receiving* interest, time-price differential or other charges which are greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest or time-price differential in default and deferment charges contracted for, charged or received, and reasonable attorneys' fees fixed by the court" (emphasis added). The general penalty provision, section 1.06 of article 5069, Texas Consumer Credit Code, has in pertinent part, identical wording. In a review of that provision, this court held: "By describing the conditions precedent to recovery of penalties in the disjunctive, the Legislature made it clear that only one such condition need to occur to trigger penalties; either a contract for, a charge of *or* a receipt of usurious interest." *Windhorst v. Adcock Pipe & Supply*, 547 S.W.2d 260, 261 (Tex.1977). When a usury claim is based upon the creditor's charge of usurious interest, the actionable conduct is that of the creditor acting unilaterally and independently. *Id.*

A unilateral act of charging occurs if the creditor enters a usurious amount of interest on a statement of account, *Windhorst*, 547 S.W.2d 260; affidavits and pleadings, *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex.Civ.App.— Austin 1975, writ ref'd n.r.e.); demand letters, *Dryden v. City National Bank of Laredo*, 666 S.W.2d 213 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); or monthly statements, *Wright Way Spraying Service v. Butler*, 690 S.W.2d 897 (Tex.1985).

■ A usurious charge may be contained in an invoice, a letter, a ledger sheet or other book or document. The basis of the action is a claim or demand for usury made by the creditor and the vehicle for the claim or demand is immaterial except as an evidentiary fact. A pay-off quote which reflects a charge of interest in excess of that allowed by law constitutes "charging" of usurious interest.

■ Whether the debtor actually pays off the loan is immaterial. Payment of the loan is not necessary to an action based upon charging usurious interest. *Windhorst*, 547 S.W.2d 260; *Missouri-Kan.-Tex. R.R. Co. v. Fiberglass Insulators*, 707 S.W.2d 943 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The mere charging of excessive interest constitutes usury. Because of our disposition of these claims, it is unnecessary to address the issues presented which question the propriety of a lender accruing interest on lender-held escrow accounts in the context of usury. We reserve this issue.

■ In addition to the previous statutory causes of action, and the penalties available thereunder, the Danzigers assert a common law claim for return of all interest paid and cancellation of interest not yet paid. The Danzigers properly pleaded their common law claim and preserved it on appeal; therefore, they are entitled to recover all interest paid. *First State Bank of Bedford v. Miller*, 563 S.W.2d 572 (Tex. 1978); *Commercial Credit Equipment Corp. v. West*, 677 S.W.2d 669 (Tex.App.— Amarillo 1984, writ ref'd n.r.e.). The Danzigers are also entitled to cancellation of all interest not yet paid because "... as to interest a usurious contract is unenforceable." *Wall v. East Texas Teachers' Credit Union*, 533 S.W.2d 918, 921 (Tex.1976).

The Danzigers further complain that the court of appeals erred in holding that an oral disclosure of information required under the Federal Truth-in-Lending Act and Regulation Z constitutes substantial compliance and thus is not a violation of the law. San Jacinto disclosed in writing a projected finance charge, total of payments, number of payments and the amount of the final installments and then orally informed the Danzigers of a crediting procedure that would reduce these figures.

■ The disclosures on the face of the note are wrong because they do not include the effect of credits which San Jacinto

knew at the inception of the loan were going to be applied to the note. San Jacinto was required to disclose that the figures on the face of the note were estimates. 12 C.F.R. § 226.6(f) (1980). The Federal Truth-in-Lending Act and Regulation Z both require disclosures to be in writing. 15 U.S.C. §§ 1631; 1639(b) (1976) [recodified at 15 U.S.C. § 1638 (1982)]; 12 C.F.R. 226.6(a); 226.8(a) (1980) [recodified at 12 C.F.R. § 226.17 (1986)].

■ The court of appeals erred in holding that the oral disclosure substantially complied with the requirements and precluded a violation. "[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976). Oral disclosure is ineffective. Strict compliance is the applicable standard. *Smith v. Chapman,* 614 F.2d 968, 971 (5th Cir.1980). *See also Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1380 (11th Cir.1984). San Jacinto violated the Truth-in-Lending Act and Regulation Z by failing to make all of the required disclosures in writing.

The judgments of the trial court and court of appeals are reversed. We render judgment that the Danzigers recover $94,-434.80 from San Jacinto on their usury claim as penalty under Tex.Rev.Civ.Stat. Ann. art. 5069–8.01(a) (Vernon Supp.1987) with post-judgment interest to accrue at 10.92 percent per annum from July 22, 1984, the date of the trial court's judgment, until satisfied. We further hold the Danzigers are entitled to recover all interest paid on the loan as recovery under the common law. We sever and remand to the trial court for it to determine what portion of the total payments by the Danzigers was paid as interest on the principal. The Danzigers also are entitled to recover $2,000 as penalty under 15 U.S.C. § 1640(a)(2)(A)(i) (1976 & Supp.IV 1980) [recodified at 15 U.S.C. § 1640(a)(2)(A)(i) (1982)] for violation of the Truth-in-Lending Act.

Finally, the Danzigers prayed for reasonable attorneys' fees under Tex.Rev.Civ. Stat.Ann. art. 5069–8.01(a) (Vernon Supp.

1987) but no evidence was adduced on the matter due to the trial court's failure to find usury. We sever and remand the award of reasonable attorneys' fees to the trial court for its determination.

HILL, C.J., not sitting.

GONZALEZ, J., filed a concurring opinion.

GONZALEZ, Justice, concurring.

I concur in the judgment of the court. However, I disagree with the dicta that pleadings alone can constitute the charging of usurious interest. I consider the issue an open question.

This court has not directly faced this issue. In *Tyra v. Bob Carroll Constr. Co.,* 639 S.W.2d 690 (Tex.1982), the court upheld a bona fide error defense, "assuming that there was a 'charge' of interest" in a pleading without reaching the issue. *Id.* at 691. Likewise, in *Petroscience Corp. v. Diamond Geophysical, Inc.,* 684 S.W.2d 668 (Tex.1984), the court rejected the court of appeals reasoning on this issue and instead focused on the issue of implied post-maturity interest. Furthermore, in *Jim Walter Homes, Inc., v. Schuenemann,* 668 S.W.2d 324 (Tex.1984) we stated that when a party "contracted to charge time price differential in excess of double the amount allowed by" the Consumer Credit Code, the party is subject to penalties under the code. *Id.* at 329. The legislature "intended to penalize a creditor who included such provisions in a retail installment contract...." *Id.* at 333. This is a far cry from penalizing a creditor for an inadvertent pleading error.

The better rule is that the filing of a petition may constitute the charging of usurious interest *only* when the underlying agreement sought to be enforced is usurious, *see e.g., Fifth Nat'l Bank of Grand Rapids v. Pierce,* 117 Mich. 376, 75 N.W. 1058, 1061 (1898) (error creating a claim for usurious interest does not render a lawful

contract usurious); *Freitas v. Geddes Savings and Loan Assoc.,* 63 N.Y.2d 254, 481 N.Y.S.2d 665, 471 N.E.2d 437, 444 (1984) (usury must be established on the face of the loan instrument); *Palmer v. Stevens-Norton, Inc.,* 75 Wash.2d 155, 449 P.2d 689, 692 (1969) (law of usury was never intended to benefit those who are not and cannot be injured by the usurious transaction); *Tacoma Hotel, Inc. v. Morrison & Co.,* 193 Wash. 134, 74 P.2d 1003, 1007 (1938) (errors in the drafting of a complaint cannot change the terms and meaning of the original agreement); or when the usurious charge was not the result of a bona fide error. Tex.Rev.Civ. Stat.Ann. art. 5069–8.01 (Vernon Supp. 1987); *Moore v. Sabine Nat'l Bank of Port Arthur,* 527 S.W.2d 209, 213 (Tex.Civ.App. —Austin 1975, writ ref'd n.r.e.). *See Southwestern Inv. Co. v. Mannix,* 557 S.W.2d 755, 760 (Tex.1977) (defenses of accidental and bona fide error not raised); *Moore v. White Motor Credit Corp.,* 708 S.W.2d 465, 471 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (no evidence of maintenance of procedures designed to avoid violations); *Nationwide Fin. Corp. v. English,* 604 S.W.2d 458 (Tex.Civ.App.—Tyler 1980, writ dism'd) (bona fide error not discussed); *General Motors Acceptance Corp. v. Uresti,* 553 S.W.2d 660 (Tex.Civ. App.—Tyler 1977, writ ref'd n.r.e.) (bona fide error not discussed).

As Judge Higginbotham stated in *Fibergrate Corp. v. Research-Cottrell, Inc.,* 481 F.Supp. 570, 572 (N.D.Tex.1979): "construing a claim asserted only in a pleading filed in a law suit as an interest charge triggering the draconian penalties of usury would do little to serve any reasonable purpose of the statute." Such a policy "would exalt form over substance" and run contrary to the well established practice that pleading amendments ought to be freely allowed to avoid injustice. *Id.* at 572. *See* Tex.R. Civ.P. 63; *Fenwal, Inc. v. Mencio Sec., Inc.,* 686 S.W.2d 660 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Rogers v. Gonzales,* 654 S.W.2d 509 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).