TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00138-CV







CIGNA Insurance Company and INAC Corporation, Appellants



v.



TPG Store, Inc. (Formerly Known as Kash Karry, Inc., Subsidiary of


Fresh Plus Austin, Inc.), Appellee







FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY


NO. 211,157, HONORABLE STEVE RUSSELL, JUDGE PRESIDING







 This is a usury case. Appellee Kash Karry, Inc., a predecessor in interest of TPG
Store, Inc. ("Kash Karry"), sued appellants CIGNA Insurance Company and INAC Corporation
for charging usurious interest on a premium finance agreement to purchase insurance policies for
Kash Karry's grocery business. The district court granted Kash Karry's motion for summary
judgment, and CIGNA and INAC appeal. We will affirm the judgment of the trial court.



THE CONTROVERSY 


 This suit arises from alleged usurious interest charges under a premium finance
agreement entered into between Kash Karry and INAC on January 21, 1991. Under the terms of
the agreement, INAC loaned Kash Karry $31,616.00 to purchase three insurance contracts from
CIGNA. The parties contracted for a 9.66% interest rate, resulting in a total finance charge of
$1,286.11. The principal and interest were to be paid in nine monthly installments of $3,655.79. 
INAC received the first installment on February 26, 1991.

 The parties' versions of the facts giving rise to Kash Karry's usury claim diverge
somewhat at this point. Kash Karry contends that on February 28, 1991, it instructed Garrett-Abney, its insurance agent, to cancel the insurance policies effective March 1, 1991. On March
21, 1991, Kash Karry received a statement from INAC that contained a "note charge back" of
$29,246.32. This charge back included the entire finance charge of $1,286.11, which was the
premium finance charge that would have been paid over the entire nine-month period if the
contract had not been cancelled. Kash Karry alleged in the trial court that this interest was
unearned, and therefore usurious, because Kash Karry cancelled the insurance policies on March
1. Kash Karry calculates the lawfully earned interest on the agreement as $481.57, and contends
that since the interest "charged" by INAC on the March 21, 1991 statement is more than double
the lawful amount of interest owed, INAC is liable for the "charging" of usurious interest under
the usury statutes. See Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(1) (West 1987).

 CIGNA and INAC argue that there was no usurious overcharge because the policy
was not cancelled until they sent a ten-day notice of cancellation to Kash Karry on March 26,
1991, which was occasioned by Kash Karry's default in payment of the premium due and billed
on March 21, 1991. In April and May 1991, INAC calculated the amount of earned interest at
$485.86, and made two partial refunds of the overcharged interest of $418.19 on April 11 and
$409.80 on May 7, 1991. CIGNA and INAC argue that the total interest refund credit of $827.99
actually resulted in an interest charge to Kash Karry of less earned interest than had accrued under
the premium finance agreement. Although Kash Karry agreed with the amount of the refunds,
it maintains that the original "charge" made by CIGNA and INAC was usurious and that a party
cannot absolve itself of a claim for usury by refund.

 Kash Karry filed a motion for summary judgment in the trial court. The court
found that INAC's actions constituted usury, granted summary judgment for Kash Karry, and
awarded damages, penalties, and attorney's fees against INAC and CIGNA pursuant to Tex. Rev.
Civ. Stat. Ann. art. 5069-1.06 (West 1987). CIGNA and INAC appeal, raising two points of
error: (1) CIGNA and INAC presented sufficient evidence of fact issues to preclude the court
from granting summary judgment; and (2) the trial court incorrectly applied the general usury
statutes to this transaction instead of the specific insurance code provisions governing premium
finance agreements.



JURISDICTIONAL DEFECT


 At oral argument, INAC raised for the first time a jurisdictional defect in the
proceedings below. Apparently, in reviewing the record before oral argument, INAC discovered
that Kash Karry's amended petition at the time of the final summary judgment had omitted INAC
as a party-defendant. Citing case law for the proposition that jurisdiction can never be waived,
INAC argues that summary judgment was improper as to INAC because it had effectively been
dismissed as a party-defendant to the lawsuit and, further, that this jurisdictional defect can be
raised at this late date. We reject INAC's argument.

 In Kash Karry's original petition, the style and body of its lawsuit had referenced 
both CIGNA and INAC. (1) However, Kash Karry's fourth amended petition dated October 6,
1992, omitted INAC from the style of the case and deleted all references to INAC from the body
of the petition. (2) Kash Karry's March 23, 1993 fifth amended petition also failed to include any
references to INAC as a defendant in the case. In both petitions, only CIGNA is identified as a
defendant. On December 17, 1993, Kash Karry filed its motion for summary judgment. The
style of the motion included INAC and the body of the petition also contained references to both
INAC and CIGNA as defendants. On January 26, 1994, CIGNA and INAC filed a response to
the motion for summary judgment and mailed copies to the court and Kash Karry. On February
4, 1994, the trial court heard argument on the motion for summary judgment and granted a partial
summary judgment against both defendants and in favor of Kash Karry. On February 9, CIGNA
and INAC filed their first amended original answer and a motion for leave, a motion for
reconsideration, (3) and a plea to the jurisdiction. (4) In both the amended original answer and the
motion for leave and reconsideration, INAC and CIGNA are identified as defendants. The trial
court granted leave for the defendants to submit their response and motion for reconsideration on
February 11, 1994. The trial court then rendered its final summary judgment against both INAC
and CIGNA on February 11, granting summary judgment for Kash Karry and awarding various
damages against both defendants. 

 INAC contends that the fourth and fifth amended petitions superseded all former
petitions and effectively dismissed INAC because they omitted any references to INAC. When
an amended petition is filed, it supplants all former petitions, which are no longer regarded as part
of the pleadings. Tex. R. Civ. P. 65; Direkly v. ARA Devcon, Inc., 866 S.W.2d 652, 655 (Tex.
App.--Houston [1st Dist.] 1993, writ dism'd w.o.j.). Moreover, it is well established that an
amended petition that omits a defendant operates as a voluntary dismissal as to that defendant. 
Webb v. Jorns, 488 S.W.2d 407, 409 (Tex. 1972); Ludwig v. Enserch Corp., 845 S.W.2d 338,
339 (Tex. App.--Houston [1st Dist.] 1992, no writ); Chamberlain v. McReight, 713 S.W.2d 372,
373-74 (Tex. App.--Beaumont 1986, writ ref'd n.r.e.). Under the applicable case law, INAC was
dismissed from the suit at the time of Kash Karry's fourth amended petition.

 Despite this dismissal, we must determine whether INAC resubmitted itself to the
jurisdiction of the court by filing an original amended answer, motions for leave and
reconsideration, and a plea to the jurisdiction, and by appearing at the summary judgment
proceeding after it was apparently nonsuited by the fourth amended petition. INAC argues that
Kash Karry was required to re-serve it with citation before INAC could properly be considered
a party to the summary judgment proceeding. See Evans v. Hoag, 711 S.W.2d 744, 746 (Tex.
App.--Houston [14th Dist.] 1986, writ ref'd n.r.e). Although service is required before a
judgment can be rendered against a defendant, a trial court can render judgment if a defendant
either waives service or voluntarily appears before the court. Tex. R. Civ. P. 124. 

 INAC concedes that a defendant's appearance before a court generally indicates a
submission to the court's jurisdiction. See Tex. R. Civ. P. 120; Gonzalez v. Gonzalez, 484
S.W.2d 611, 613 (Tex. Civ. App.--El Paso 1972, no writ). No dispute exists that INAC appeared
before the trial court in this proceeding. INAC avers, however, that its mere presence before the
court was not an appearance for all purposes and, thus, did not invoke the general jurisdiction of
the court. A party does not submit itself to the jurisdiction of the court if it appears before the
court "solely for the purpose of challenging the jurisdiction of the court . . . and does not waive
the illegality of the service or submit the party to the court's jurisdiction." Lindsey v. Ferguson,
80 S.W.2d 407, 409-10 (Tex. Civ. App.--Eastland 1935, no writ) (emphasis added). As one court
recently noted: "[T]he mere presence in court of an attorney, retained as counsel by a person
formerly a party to the lawsuit, does not constitute a general appearance, unless the attorney seeks
a judgment or an adjudication on some question." Strawder v. Thomas, 846 S.W.2d 51, 61 (Tex.
App.--Corpus Christi 1992, no writ) (emphasis added); see Smith v. Amarillo Hosp. Dist., 672
S.W.2d 615, 616-17 (Tex. App.--Amarillo 1984, no writ) (concluding that defendant who appeared
at trial but was never served with an amended petition did not make a general appearance because
he never filed any documents or requested action before trial, was not represented by counsel, and
said nothing during trial after acknowledging he was the defendant). 

 INAC's claim clearly fails under these standards because it did not appear before
the court solely for the purpose of raising jurisdiction, but rather sought judgment or adjudication
on some question. See Strawder, 846 S.W.2d at 61. INAC, along with CIGNA, filed its
response to Kash Karry's summary-judgment motion on January 26, 1993, asking the court to
deny Kash Karry's motion. INAC also filed a motion for reconsideration on February 9, 1993,
requesting the court to reconsider its partial summary judgment in favor of Kash Karry. The court
granted these motions and reconsidered its summary judgment ruling before ultimately ruling in
favor of Kash Karry. Clearly, INAC asked the court for an adjudication of the summary-judgment motion on the merits. See id. 

 Nor can INAC argue that it was not a party to the lawsuit because it was not
reinserted in the suit in a subsequent amended pleading. Persons who are not named or served
can become parties to a suit by voluntarily submitting themselves to the trial court's jurisdiction. 
See Davis v. Outdoor Equip. Co., 551 S.W.2d 72, 73 (Tex. Civ. App.--Houston [1st Dist.] 1977,
no writ) (partnership that was never named or served became a party when it voluntarily entered
an appearance); Talbert v. Herrera, 353 S.W.2d 948, 951 (Tex. Civ. App.--San Antonio 1962,
no writ) (concluding that person who was not named as a defendant in plaintiff's petition became
a party to suit by filing answer). We conclude that because of its appearance before the trial
court, INAC was a party to the suit despite its apparent dismissal in the fourth amended petition. 
INAC's contention regarding an alleged jurisdictional defect is overruled.



DISCUSSION


 CIGNA and INAC argue in their first point of error that the trial court erred in
granting summary judgment because they presented evidence raising factual issues that preclude
summary judgment. The standards for reviewing a motion for summary judgment are well
settled: (1) The movant for summary judgment has the burden of showing that no genuine issue
of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). 

 Under Article 5069-1.06, a person can recover damages from "[a]ny person who
contracts for, charges or receives interest which is greater than the amount authorized by this
Subtitle." Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(1) (West 1987) (emphasis added). CIGNA
and INAC argue that a contract that is not usurious on its face will not be held in violation of the
usury laws unless the dominant purpose and intent of the parties to the contract is to extract more
interest than allowed by law. See Hernandez v. United States Fin. Co., 441 S.W.2d 859, 862
(Tex. Civ. App.--Waco 1969, writ dism'd). Kash Karry, however, does not contend that the
contract itself was usurious, but rather that INAC charged usurious interest. Courts have broadly
construed the usury statutes to conclude that usurious charging occurs if an excessive amount of
interest is entered on a statement of account, affidavits or pleadings, demand letters, or monthly
statements. See Danziger v. San Jacinto Sav. Ass'n, 732 S.W.2d 300, 304 (Tex. 1987) (pay-off
quote that reflects excessive charge of interest constitutes charging usurious interest); Woodcrest
Assocs., Ltd. v. Commonwealth Mortgage Corp., 775 S.W.2d 434, 436-37 (Tex. App.--Dallas
1989, writ denied) (demand letter construed as charging interest); Augusta Dev. Co. v. Fish Oil
Well Servicing Co., 761 S.W.2d 538, 542 (Tex. App.--Corpus Christi 1988, no writ) (usurious
charge can be contained in an invoice, letter, ledger sheet, or other document). As the supreme
court has noted, "[t]he basis of the action is a claim or demand for usury made by the creditor and
the vehicle for the claim or demand is immaterial except as an evidentiary fact." Danziger, 732
S.W.2d at 304.

 Based on this liberal construction of "charging," we agree with Kash Karry that the
March 21, 1991 statement INAC sent to Kash Karry, which included a charge of interest for the
whole contract term, despite the fact that the contract was cancelled after one month, is sufficient
to establish that INAC and CIGNA had engaged in usurious charging. 

 CIGNA and INAC argue that they raised material fact issues which prevent the trial
court from granting a final summary judgment. We note that the basic factual disputes between
the parties involve the cancellation of the three insurance contracts in question, the actual amount
of interest earned on the cancelled contracts, and the effect of the interest refunds made to Kash
Karry. Kash Karry argues that while the parties dispute some facts in this case, none are material
to the ultimate resolution of this appeal. We agree.

 For example, the parties dispute the cancellation date of the contract. Kash Karry
contends that the correct date is March 1, 1991, while CIGNA and INAC argue that the correct
date is April 10, 1991. Despite this discrepancy in cancellation dates, however, the parties are
in virtual agreement as to the correct amount of earned interest under either date. According to
INAC's and CIGNA's calculations, $485.86 was the amount of earned interest, while Kash Karry
calculated the amount of earned interest at $481.57.

 Kash Karry cites supreme court authority for the proposition that "[o]nce usurious
interest has been charged, the lender cannot purge its action by a subsequent credit." Danziger,
732 S.W.2d at 302. Thus, Kash Karry contends that no material factual disputes are presented;
if the usury statutes apply, CIGNA and INAC, under the uncontroverted summary judgment
proof, have charged Kash Karry $1,286.11 in interest when the total earned interest due could not
have exceeded $485.86. We agree that the factual disputes present in the record are immaterial
to this usury case and do not preclude resolution by summary judgment. We overrule CIGNA
and INAC's first point of error.

 In their second point of error, CIGNA and INAC allege that the trial court erred
in concluding that the interest charged was twice the amount allowed by law, and in applying the
general usury statutes to award damages of three times the usurious amount of interest, forfeiture
of the principal, and attorney's fees. Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(2) (West 1987). 
CIGNA and INAC concede that the total earned interest between January 21, 1991, and March
20, 1991 was only $485.86. CIGNA and INAC do not contend that they did not charge
$1,286.11; instead they argue that they ultimately refunded $827.99 to Kash Karry. Because we
have previously decided that this refund does not exonerate CIGNA and INAC from liability for
committing usury, we conclude that the trial court did not err in determining that CIGNA and
INAC charged Kash Karry more than twice the amount of interest allowed by law ($1,286.11
instead of $485.86). 

 Under Article 5069-1.06, a person who charges interest which is greater than the
amount authorized by law must forfeit three times the amount of usurious interest charged, and
a person who charges "double the amount of interest allowed by this Subtitle shall forfeit as an
additional penalty, all principal as well as interest and all other charges and shall pay reasonable
attorney's fees." Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(1), (2) (West 1987) (emphasis added). 
CIGNA and INAC argue that the trial court erred in applying this article to determine the amount
of damages because Article 24.08 of the Insurance Code provides the correct measure of damages. 
Chapter 24 of the Insurance Code governs the licensing of insurance premium finance companies
and the application of premium finance agreements, such as the one involved in the instant case.
Tex. Ins. Code Ann. arts. 24.01-.22 (West 1981 & Supp. 1995). Chapter 24 authorizes a penalty
of forfeiture of all charges and twice the amount of all charges paid if a premium financing
company assesses a greater charge than Chapter 24 permits. Tex. Ins. Code Ann. art. 24.08(b)
(West 1981 & Supp. 1995).

 Chapter 24, however, does not specify the maximum rates of interest that premium
financing companies are permitted to charge. The maximum rates are provided in Article 5069-1.04, which specifically outlines the relationship between Chapter 24 and the interest statutes:



Any person subject to a provision of Chapter 24 of the Insurance Code who
contracts for, charges, or receives a rate authorized by this Article shall comply
with all other applicable duties, obligations, and prohibitions in that law and the
parties to those contracts . . . have all other rights applicable to those transactions
under Chapter 24 of the Insurance Code, except to the extent inconsistent with this
Article. . . .



Tex. Rev. Civ. Stat. Ann. art. 5069-1.04(n)(7) (West 1987) (emphasis added). Thus, Article
24.08 applies except to the extent that it is inconsistent with Article 5069-1.04. Article 5069-1.04(o)(1) supplies the method for determining damages in instances where excessive interest has
been charged:



All other written contracts whatsoever, except those otherwise authorized by law,
which may in any way, directly or indirectly, provide for a greater rate of interest
shall be subject to the appropriate penalties prescribed in this Subtitle.



Tex. Rev. Civ. Stat. Ann. art. 5069-1.04(o)(1) (West 1987). The appropriate penalty for
charging twice the permissible rate of interest is detailed in Article 5069-1.06, which authorizes
the penalties that the judge awarded in the instant case. Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(2) (West 1987). To the extent that Articles 24.08 and 5069-1.04 conflict, Article 5069-1.04
controls. Tex. Rev. Civ. Stat. Ann. art. 5069-1.04(n)(7) (West 1987). Therefore, we conclude
that the trial judge did not err in applying Article 5069-1.06(2) to calculate the appropriate
measure of damages.

 Our decision is strengthened by the fact that Article 24.08 does not indicate what
constitutes the "charges" subject to its penalty provision. In contrast, Article 5069-1.06 explicitly
concerns excessive charges of interest. Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(2) (West 1987). 
When two statutes conflict, the specific will control over the general. City of Dallas v. Mitchell,
870 S.W.2d 21, 23 (Tex. 1994); Sam Bassett Lumber Co. v. City of Houston, 198 S.W.2d 879,
881 (Tex. 1947). CIGNA and INAC's second point of error is overruled.

 Having overruled all of CIGNA and INAC's points of error, we affirm the
judgment of the trial court.



 Mack Kidd, Justice 

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: February 22, 1995

Publish 
1.   Although the relationship between INAC and CIGNA is not specified in the record, the
record does include a letter by INAC that identifies INAC as a "CIGNA company." The two
defendants were represented by the same counsel at trial and on appeal, have filed joint
answers and motions, and at no time has either indicated that its interests are adverse to that
of the other. Despite the absence from the record of any definitive evidence of service,
CIGNA and INAC appear to agree that INAC was properly served and was a proper
defendant in the suit until the fourth amended petition deleted all references to INAC.
2.   Although the record does not contain Kash Karry's earlier petitions, we assume that
INAC was named as a party in both the style and the body of the petition since INAC and
CIGNA do not dispute that INAC had previously been named a defendant.
3.   The motion for leave to file the defendants' response to the motion for summary
judgment and the motion for leave and reconsideration were based upon CIGNA and INAC's
February 8, 1994 discovery that the trial court may not have had before it their response to
the summary judgment motion when the court granted partial summary judgment to Kash
Karry after the February 4, 1994 hearing on the motion. 
4.   The plea to the jurisdiction was based on an argument that Kash Karry failed to
exhaust its administrative remedies before proceeding to the trial court. CIGNA and INAC
have not urged this point in the instant appeal.