

# IN THE
## TENTH COURT OF APPEALS

No. 10-11-00080-CV

SAEED A. ALLY, M.D.,

Appellant

v.

THE BANK & TRUST OF BRYAN/COLLEGE STATION,

Appellee

From the 85th District Court
Brazos County, Texas
Trial Court No. 10-001287-CV-85

## MEMORANDUM OPINION

In this appeal, appellant, Saeed A. Ally, M.D., complains about a summary judgment granted in favor of appellee, The Bank & Trust of Bryan/College Station ("BTBCS"). In three issues, Dr. Ally argues that: (1) the trial court erred in granting summary judgment because material fact issues exist; (2) the summary judgment should be reversed because the Bank obtained a double recovery given that it had already entered into an agreed judgment against a third party for the alleged full amount owed under the note; and (3) there is no final judgment in this case. We affirm.

# I. BACKGROUND

This appeal stems from a loan and guaranty agreement that was to be used to promote the operations of an environmental-service business—SETX Clearwater Environmental, LLC ("SETX")—in Jefferson County, Texas. On or about April 17, 2007, SETX executed a promissory note, a second lien deed of trust, and other loan documents in favor of Texas Enterprise Bank ("TEB")—BTBCS's predecessor-in-interest. The note was in the original principal amount of $500,000 and stated that payments were due on the first of each calendar month. As security for the note, SETX pledged as collateral five acres of land that is part of Block 5, Final Plat Port Arthur Economic Development Corporation Business Park, recorded as File No. 2005044721, Official Public Records, Jefferson County, Texas.

Also on April 17, 2007, Dr. Ally and O. LaWayne Miller, M.D., executed separate, yet identical, personal guaranties as additional security for the payment of the note. The guaranty that Dr. Ally signed specifically stated that he:

> irrevocably and unconditionally guarantees to [TEB] and its successors and assigns the payment and performance of the 'Guaranteed Debt' . . . as and when the same shall be due and payable. Guarantor hereby irrevocably and unconditionally covenants and agrees that Guarantor is liable for the Guaranteed Debt as a primary obligor.

The guaranty defined "Guaranteed Debt" as all indebtedness owed by SETX to TEB pursuant to the note, including, among other things, all fees, principal, interest, and attorney's fees.

The note provided for payments of interest only from April 1, 2007 through the loan conversion date, at which time the note converted to a fixed-rate note. It is

undisputed that the loan conversion occurred on November 1, 2007. As a result of the loan conversion, the principal and interest payments made by Dr. Ally would be due beginning December 1, 2007 with a maturity date of November 1, 2012. The note further provided that the fixed rate would be equal to the prime rate published in the Wall Street Journal on the date of the loan conversion, which was 7.5% on November 1, 2007.

According to Cal McNeill, a Senior Vice-President at BTBCS, SETX made monthly payments to TEB "of $10,226.68 and continued to make payments in this amount after the interest rate on the Note was increased on August 28, 2008." The increase on the interest rate on August 28, 2008 apparently stemmed from a modification and extension agreement that Drs. Ally and Miller signed, which allowed for the applicable interest rate for the remainder of the note's term to be a fixed 9.0% per year and the monthly payment to remain the same.[1] However, for the monthly payments to remain the same, the principal and interest allocation was adjusted accordingly.

In 2009, TEB merged with The Bank & Trust of Del Rio, Texas, which resulted in the merged banking entity being renamed as BTBCS. It is undisputed that BTBCS is TEB's successor-in-interest and the current owner and holder of the note and the beneficiary under the deed of trust executed by SETX.

---

[1] On appeal, Dr. Ally calls the August 28, 2008 loan modification into question by alleging that the document was neither notarized nor signed by the lender, though he recognizes that both he and Dr. Miller signed the modification documents.

During the term of the note, SETX was late or missed multiple payments. As a result, BTBCS charged SETX a late fee equal to 5% of the monthly payment amount in accordance with the terms of the note.[2] According to BTBCS, since the execution of the note through September 2, 2010, SETX missed or was late on twenty monthly payments, which resulted in $10,226.60 in late charges.[3]

Also during the term of the note, BTBCS alleged that it incurred fees associated with the property owned by SETX, which totaled $6,399.92. These fees were described as follows: (1) $1,167.42 in fees for legal services incurred on November 5, 2008; (2) $1,729.00 in fees for the appraisal of equipment owned by SETX on November 5, 2008; (3) $3,000.00 in fees for a real estate appraisal of the property on November 5, 2008; and (4) $503.00 in legal fees incurred on January 20, 2009. BTBCS added the fees to the principal of the note, though they admit that some of the fees may have received "an errant coding on the loan payment history."

On February 5, 2010, BTBCS sent Drs. Ally and Miller and SETX a notice of default and intent to accelerate the note. BTBCS informed Drs. Ally and Miller that SETX had defaulted in making monthly installment payments for December 2009,

---

[2] The note specifically provided that:

> In addition to the payments otherwise specified herein, subject to the provisions of Section 5.4 hereof, if Maker [SETX] fails, refuses or neglects to pay, in full, any installment or portion of the indebtedness evidenced hereby, as and when same shall be due and payable and for a period of ten (10) days thereafter, then after such ten (10) day grace period[,] Maker shall be obligated to pay to Payee [BTBCS] a late charge equal to five percent (5%) of the amount of such delinquent payment to compensate Payee for Maker's default and the additional costs and administrative efforts required by reason of such default.

[3] BTBCS states in their appellate brief that the late fees were accrued in March through May 2008 and April through August 2010.

January 2010, and February 2010 and requested payment of $38,861.32 on or before March 4, 2010 to cure the deficiency.

No payment was made to BTBCS by March 4, 2010. BTBCS then sent notices of acceleration and substitute trustee's sale to SETX and Drs. Ally and Miller. In these notices, BTBCS notified the parties that the note had been accelerated and demanded payment for the remaining balance on the note—$360,811.15 in principal, $11,244.63 in interest, and $8,692.61 in late fees. Once again, no payment was made to BTBCS.

Subsequently, on May 11, 2010, BTBCS filed its original petition in the trial court, alleging a breach of contract cause of action against Drs. Ally and Miller, as personal guarantors for the debts owed by SETX. Dr. Ally responded to BTBCS's original petition by filing an original answer and asserting various affirmative defenses. Dr. Miller filed a separate original answer asserting only a general denial. Thereafter, BTBCS filed separate, yet substantially similar, traditional motions for summary judgment against Drs. Ally and Miller.

Dr. Ally responded to BTBCS's summary-judgment motion by filing: (1) a first amended answer, containing a general denial and asserting the affirmative defenses of usury and accounting; and (2) an opposition to BTBCS's summary-judgment motion. Pursuant to a rule 11 agreement, BTBCS filed a supplemental summary-judgment motion and Dr. Ally filed a supplemental and amended opposition to BTBCS's summary-judgment motion.[4] BTBCS then filed written objections to the exhibits

---

[4] Dr. Ally attached to his supplemental and amended opposition to BTBCS's summary-judgment motion copies of the modification and loan agreements, an affidavit he executed, a printout of the loan-payment history, and a mortgage calculator and amortization table.

attached to Dr. Ally's supplemental and amended opposition to its summary-judgment motion.[5]

The trial court scheduled the hearing on BTBCS's summary-judgment motion for September 23, 2010. However, prior to the hearing, BTBCS and Dr. Miller filed an agreed judgment in the trial court, which the trial judge signed on September 20, 2010. Despite the signed, agreed judgment between BTBCS and Dr. Miller, the trial court conducted the scheduled hearing on BTBCS's summary-judgment motion as to Dr. Ally. At the hearing, the trial court granted BTBCS's objections to Dr. Ally's summary-judgment evidence and granted BTBCS's summary-judgment motion. The order granting BTBCS's summary-judgment motion indicated that BTBCS was to recover damages from Dr. Ally in the amount of $398,699.28, including outstanding principal and interest accrued, $26,374.71 in attorney's fees and collection costs, and 5% post-judgment interest. The trial court signed the final order on the same day as the hearing.

Nevertheless, after the final order was signed but also on September 23, 2010, Dr. Ally filed counterclaims against BTBCS for breach of contract, usury, breach of fiduciary duty, and negligence. The record does not reflect that Dr. Ally obtained leave of court to file his counterclaims after the final order had been signed and entered on the trial court's docket. Shortly thereafter, Dr. Ally filed his notice of appeal.

---

[5] In its objections, BTBCS argued that: (1) Dr. Ally's affidavit is conclusory and contains statements "that are not clear, positive, direct, credible, or free from contradiction and cannot be readily controverted"; (2) Dr. Ally's inclusion of the mortgage calculator and amortization table was improper because the item constituted "inadmissible hearsay, it is not authenticated, and is irrelevant and inherently unreliable." The remaining items attached to Dr. Ally's filing were also attached to BTBCS's summary-judgment motion.

## II. WHETHER THE TRIAL COURT'S SUMMARY-JUDGMENT ORDER IS FINAL FOR PURPOSES OF APPEAL

In his third issue, Dr. Ally questions our jurisdiction over this matter by contending that the trial court's summary judgment is not final because the record does not indicate that the trial court struck his counterclaims against BTBCS; therefore, the trial court's summary judgment did not dispose of all parties and issues in this case and cannot be appealed at this point. BTBCS counters that the trial court's summary-judgment order is final because it resolved all claims and actions pending in the lawsuit and, thus, is appealable. Specifically, BTBCS argues that Dr. Ally's filing of his counterclaims after the summary-judgment order had been signed and entered on the trial court's docket without leave of court does not render the summary-judgment order unappealable.

### A. Applicable Law

"[W]e are obligated to review sua sponte issues affecting jurisdiction." *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004). When an appellate court concludes that it does not have jurisdiction, it can only dismiss the appeal. *See id.* An appeal may be taken only from a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). There is no presumption of finality for summary-judgment orders. *See Ford v. Exxon Mobil Chem Co.*, 235 S.W.3d 615, 617 (Tex. 2007) (citing *Lehmann*, 39 S.W.3d at 205-06). However, "'[a] judgment that actually disposes of all parties and all claims is final, regardless of its language.'" *Id.* (quoting *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 830 (Tex. 2005)).

The rules of civil procedure allow parties to amend their pleadings "provided, that any pleadings, responses, or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained." TEX. R. CIV. P. 63; *see Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (per curiam). Thus, the rules require a party to seek leave of court before filing an amended pleading within seven days of trial.[6] *See* TEX. R. CIV. P. 63. The rules further provide that leave shall be granted "unless there is a showing that such filing will operate as a surprise to the opposite party." *Id.*; *see Chapin & Chapin v. Tex. Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992).

In *Chapin v. Chapin*, the Texas Supreme Court explained that the trial court lacks discretion to deny amendments to the pleadings where the change is merely procedural and does not change the substantive issues for trial. 844 S.W.2d at 664-65 (allowing a party to amend its answer to include a verified denial). However, where the amendment is substantive in nature and alters the issues for trial, the trial court retains discretion to deny leave to amend. *Id.*; *see* TEX. R. CIV. P. 166a(c) (providing that the trial court can only consider the pleadings and proof on file at the time of the summary-judgment hearing "or filed thereafter and before judgment with permission of the court"); *Hardin v. Hardin*, 597 S.W.2d 347, 349-50 (Tex. 1980) (affirming the denial of leave to amend on the day of trial to add affirmative defenses); *see also Cherry v. McCall*,

---

[6] A summary-judgment proceeding is a trial within the meaning of rule 63. *See IKB Indus., Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997) (citing *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988)); *see also* TEX. R. CIV. P. 63.

138 S.W.3d 35, 43 (Tex. App.—San Antonio 2004, pet. denied)[7]; *Leinen v. Buffington's Bayou City Serv. Co.*, 824 S.W.2d 682, 685 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("There is nothing in the record to show that appellant had obtained leave of court to file the amended pleading, or even brought it to the attention of the court so as to be considered on the motion for summary judgment.  A trial court does not abuse its discretion by refusing to consider summary judgment pleadings filed after the summary judgment hearing. . . .  Appellant's second point of error is overruled."). Moreover, when a trial court refuses amendments introducing new substantive matters, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise.  *Hardin*, 597 S.W.2d at 349.

## B. Discussion

In this case, Dr. Ally did not file his counterclaims against BTBCS until after the trial court signed the summary-judgment order and entered its ruling on the docket. *See* TEX. R. CIV. P. 166a(c); *Chapin & Chapin*, 844 S.W.2d at 664-65; *Hardin*, 597 S.W.2d at

---

[7] In *McCall*, the Cherrys filed an amended petition adding causes of action after the trial court entered a take-nothing partial summary judgment on all claims asserted by the Cherrys.  138 S.W.3d at 42.  The only remaining issue, which was severed from the main case, was the McCalls' counterclaim for attorney's fees.  *Id.*  The San Antonio Court of Appeals noted that:

> When a party files an amendment on the eve of trial without first seeking leave of court, we will not consider the party's complaint that the trial court abused its discretion in refusing to grant leave.  *Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 203 (Tex. App.—San Antonio 1991, no writ).  Here, the Cherrys filed their amended petition not on the eve of trial but *after* trial.  *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) (holding that a summary judgment hearing is a trial within the meaning of Rule 63).  Furthermore, the Cherrys failed to obtain leave from the trial court before filing.  For these reasons, we hold that the trial court did not abuse its discretion in striking the added causes of action in the Cherrys' amended petition.

*Id.* at 43 (emphasis in original).

349-50; *see also McCall*, 138 S.W.3d at 43; *Leinen*, 824 S.W.2d at 685. In fact, the reporter's

record from the summary-judgment hearing contains the following colloquy:

| THE COURT: | Are there counterclaims on file in this case that I'm not aware of? |
|---|---|
| [Dr. Ally's Counsel]: | I am actually filing a counterclaim today . . . . And—so my counterclaim will be being [sic] asserted. Intended on filing that prior—before—prior to going to the hearing. |
| THE COURT: | So your answer is no? |
| [Dr. Ally's Counsel]: | Well, it's not on file; but it will be shortly. |
| THE COURT: | Plaintiff's objections are sustained, defendant's objections are overruled. Plaintiff's motion for summary judgment is granted, and the order is signed. |

Moreover, the record does not indicate that Dr. Ally obtained leave from the trial court

to file his counterclaims. *See* TEX. R. CIV. P. 63; *see also Sosa*, 909 S.W.2d at 895. We

conclude that the trial court's summary-judgment order, though it does not specifically

state that it finally disposed of all pending claims, effectively disposed of all remaining

claims and parties known to the trial court at the time of the hearing. *See Ford*, 235

S.W.3d at 617; *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d at 830;

*Lehmann*, 39 S.W.3d at 205-06 (noting that an order or judgment entered before a

conventional trial on the merits is final for purposes of appeal if it (1) actually disposes

of all claims and all parties before the court or (2) clearly and unequivocally states that it

finally disposes of all claims and all parties). Dr. Ally cannot rely on his counterclaims

that were untimely filed without leave of the trial court to undermine the trial court's summary-judgment order or to show that the trial court abused its discretion. *See Hardin*, 597 S.W.2d at 349. In addition, we further note that Dr. Ally does not include any record citations or relevant authority in support of this contention. *See* TEX. R. APP. P. 38.1(i).

Based on the foregoing, we hold that the trial court's summary-judgment order is final and appealable; thus, we have jurisdiction over this matter. *See Ford*, 235 S.W.3d at 617; *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d at 830; *Lehmann*, 39 S.W.3d at 205-06; *see also Rape*, 139 S.W.3d at 673. Accordingly, Dr. Ally's third issue is overruled.

### III. THE TRIAL COURT'S SUMMARY JUDGMENT

In his first issue, Dr. Ally argues that the trial court erred in granting summary judgment because numerous material fact issues exist. We disagree.

A. **Standard of Review**

We review the grant or denial of a traditional summary judgment de novo. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). A movant is entitled to summary judgment if he demonstrates that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *see also Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power*

*Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). Only when the movant has produced sufficient evidence to establish its right to summary judgment does the burden shift to the non-movant to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

## B. **Applicable Law**

A plaintiff who sues for recovery on a promissory note "does not have to prove all essential elements for a breach of contract but rather need only establish the note in question, that the defendant signed it, that the plaintiff was the legal owner and holder thereof, and that a certain balance is due and owing on the note." *Rockwall Commons Assocs. v. MRC Mort. Grantor Trust I*, 331 S.W.3d 500, 505 (Tex. App.—El Paso 2010, no

pet.) (citing *TrueStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.—Dallas 2010, no pet.); *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd)).

C. **Discussion**

In support of its summary judgment, BTBCS tendered, among other things, an affidavit from McNeill, who detailed the pertinent transactions. McNeill explained the factual history of the note, including the fact that both Drs. Ally and Miller signed as co-guarantors for the $500,000 loan obtained for the benefit of SETX and that BTBCS is the owner and holder of the note. McNeill further explained that the doctors' initial payments were allocated toward the interest only until the note converted to a 7.5% fixed-rate loan on November 1, 2007. McNeill acknowledged that SETX made several monthly payments of $10,226.68 and that the current outstanding balance on the note is $360,811.15. McNeill then noted that, on August 28, 2008, Drs. Ally and Miller executed a modification and extension agreement, which adjusted the interest rate on the note to 9% per year while the actual monthly payment remained the same (the portions of the monthly payment allocated to principal and interest were adjusted). McNeill stated that SETX missed or was late on twenty monthly payments, which resulted in late charges of $10,226.60 for March 2008, April 2008, May 2008, and April 2009 through August 2010. Drs. Ally and Miller were notified of the missed payments and were informed that they were in default. TEB gave the doctors time to cure the default by making a lump-sum payment of $38,861.32. As noted in McNeill's affidavit, neither doctor cured the deficiency; therefore, TEB accelerated the balance of the note and

demanded that the doctors pay the remaining $360,811.15 principal balance in addition to $11,244.63 in interest and $8,692.61 in late charges. However, once again, neither doctor attempted to cure the deficiency. McNeill averred that the total amount owed to BTBCS by Dr. Ally as of September 2, 2010, was $398,699.28 (comprised of the $360,811.15 remaining principal balance, $10,226.60 in late charges, and $27,661.53 in accrued but unpaid interest) plus reasonable attorney's fees. *See Am. 10-Minute Oil Change, Inc. v. Metro. Nat'l Bank—Farmers Branch*, 783 S.W.2d 598, 601 (Tex. App.—Dallas 1989, no writ) (citing *8920 Corp. v. Alief Alamo Bank*, 722 S.W.2d 718, 720 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (holding that an affidavit, made on personal knowledge by a bank officer and which identified the notes and guaranty and recited the principal and interest due, was not conclusory and was sufficient evidence to support a summary judgment motion)).

In addition to McNeill's affidavit, BTBCS attached copies of all relevant loan documents that SETX executed in favor of BTBCS's predecessor-in-interest, TEB. Among the documents provided was the note itself, which was signed by Dr. Ally and provided that he was obligated to pay BTBCS late charges equal to 5% of the amount of the delinquent payment and any "additional costs and administrative efforts required by reason of such default." The note also provided that Dr. Ally, as one of the guarantors, is responsible for paying "all costs of collection hereof when incurred, including attorneys' fees, whether or not any legal action shall be instituted to enforce this Note." The guaranty and modification agreements were also attached to BTBCS's

summary-judgment motion, both of which were signed by Dr. Ally and set forth all fees for which he is responsible.

Based on our review of the summary-judgment record, we find sufficient evidence to establish the essential elements of BTBCS's suit for recovery on a promissory note. *See Rockwall Commons Assocs.*, 331 S.W.3d at 505; *TrueStar Petroleum Corp.*, 323 S.W.3d at 319; *Clark*, 658 S.W.2d at 295. However, our analysis of this issue does not end here. Because BTBCS's summary-judgment evidence is sufficient to establish its entitlement to summary judgment, the burden shifts to Dr. Ally to produce evidence creating a material fact issue as to the disputed elements. *See Steel*, 997 S.W.2d at 223.

With regard to Dr. Ally's summary-judgment evidence, we note that the trial court sustained all of BTBCS's objections, which effectively eliminated from consideration all of Dr. Ally's evidence that was not cumulative of BTBCS's evidence. And furthermore, on appeal, Dr. Ally does not challenge the trial court's ruling on the objections. Nevertheless, Dr. Ally argues on appeal that: (1) BTBCS failed to properly apply credits to amounts owed; (2) BTBCS's accounting fails to address properly the modification agreements; (3) BTBCS's accounting erroneously charges excessive late fees; (4) BTBCS's loan history does not provide accurate monthly payment calculations; (5) there exists material fact issues regarding whether BTBCS's charges of interest, late fees, and "other unverified charges are usurious"; and (6) material fact issues exist regarding the amount of reasonable and necessary attorney's fees owed to BTBCS.

Dr. Ally's first contention centers on alleged accounting errors that resulted in payments made on January 31, 2008 and December 5, 2008 being entered as debits rather than credits. McNeill's affidavit addresses these alleged accounting errors. McNeill explains that a payment was made on January 31, 2008 in the amount of $7,121.87 and that another payment was made on December 5, 2008 in the amount of $10,226.68. However, these payments were listed as debits because the checks corresponding to these payments did not clear and were returned. As a result, the loan payment history reflected that a payment was made. It also indicated an "R" marking, which meant "Reversal." Based on the foregoing, we cannot say that Dr. Ally's first contention raises a genuine issue of material fact that precludes summary judgment.

In his second contention, Dr. Ally complains that BTBCS fails to address the modification agreements properly. In particular, Dr. Ally argues that the loan payment history does not match the balance due and owing as of the August 28, 2008 modification agreement. However, in making this argument, Dr. Ally does not cite to any portion of the record or authority to support his contention. Accordingly, we find this argument to be inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

In his third argument, Dr. Ally asserts that BTBCS erroneously charged excessive late fees. Specifically, Dr. Ally contends "[a]lthough it is unclear how the late fees were calculated, it is evidence that Appellee charged late fees in violation of the terms of the Modification Agreements." Dr. Ally states that the modification agreements provided that late fees would not be assessed if the payment is made within ten days of the due date. He then notes, in a conclusory fashion, that BTBCS failed to comply with the

terms of the modification agreements.  Based on our review of the record and Dr. Ally's brief, we cannot say that this argument is adequately explained with requisite specificity.  *See id.*  In addition, Dr. Ally does not direct us to evidence in the record demonstrating that he made several payments within the alleged ten-day grace period and that BTBCS charged late fees in excess of those allowed under the governing documents.  The note authorized the application of a 5% late fee for delinquent payments, which resulted in $511.33 in late fees each month between April 2007 and September 2010.  Based on the record before us, we cannot say that Dr. Ally's third contention raises a genuine issue of material fact that precludes summary judgment.

Dr. Ally's fourth contention centers on his monthly payments.  Relying on a mortgage calculator obtained from Bankrate.com, Dr. Ally alleges that BTBCS erroneously calculated his monthly payment to be $10,226.68 rather than $10,018.97.  However, much of Dr. Ally's summary-judgment evidence was stricken by the trial court, including his usage of the mortgage calculator, which he relies on exclusively in this argument.  Moreover, the record does not contain any controverting affidavits that could raise a fact issue as to BTBCS's method of computation and accuracy of its figures.  *See Alief Alamo Bank*, 722 S.W.2d at 720 (citing *Sharpe v. Lomas Nettleton Fin. Corp.*, 601 S.W.2d 55, 57 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.)).  Furthermore, we find it curious that Dr. Ally complains about the monthly payment amounts now, yet McNeill recounted that SETX "made monthly payments to [TEB] in the amount of $10,226.68 and continued to make payments in this amount after the interest rate on the Note was increased on August 28, 2008."  Based on our review of the record, we cannot

say that Dr. Ally satisfied his burden of showing material fact issues thereby precluding summary judgment in favor of BTBCS.

Next, Dr. Ally argues that BTBCS's charges of interest, late fees, and "other unverified charges are usurious" in violated of chapters 302 and 305 of the finance code. *See* TEX. FIN. CODE ANN. §§ 302.001-.104, 305.001-.105 (West 2006). First, we point out that Dr. Ally does not specify exactly which provisions of chapters 302 and 305 of the finance code that BTBCS violated. *See* TEX. R. APP. P. 38.1(i). In addition, "[w]hen a usury claim is based upon the creditor's charge of usurious interest, the actionable conduct is that of the creditor acting unilaterally and independently." *Danzinger v. San Jacinto Sav. Ass'n*, 732 S.W.2d 300, 304 (Tex. 1987). Here, Dr. Ally and BTBCS agreed upon the interest rates in this case. Initially, interest accrued at a rate of 7.5% until the parties agreed to modify the note to change the interest rate to 9.0%. Given the fact that the parties agreed upon the interest rates to be charged, we do not believe BTBCS's conduct to be unilateral or independent in nature so as to give rise to a claim of usury with respect to the interest rate. *See id.* Regarding the late fees, the note, which Dr. Ally signed, provided that a late charge of 5% would be charged in the event that a monthly payment is delinquent. Dr. Ally does not adequately explain how a 5% late fee allowed BTBCS to receive greater compensation than allowed by law. *See C&K Invs. v. Fiesta Group, Inc.*, 248 S.W.3d 234, 241 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("The essential elements of a usurious transaction are '(1) a loan of money, (2) an absolute obligation to repay the principal, and (3) *the exaction of a greater compensation than allowed by law for the use of the money by the borrower*.'" (quoting *Anglo-Dutch Petroleum Int'l, Inc.*

*v. Haskell*, 193 S.W.3d 87, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (emphasis added)). And finally, Dr. Ally neither adequately explains the alleged "unverified charges" nor provides a citation to the record showing the "unverified charges." As a result, Dr. Ally's complaint pertaining to the alleged "unverified charges" is inadequately briefed." *See* TEX. R. APP. P. 38.1(i).

In his final contention in this issue, Dr. Ally argues that BTBCS failed to address the "Lodestar" factors in its attorney's fees affidavit.[8] Regarding attorney's fees, BTBCS included an affidavit executed by Terrence D. Dill Jr., wherein he averred that he is familiar with rule 1.04 of article 10, section 9 of the Texas Disciplinary Rules of Professional Conduct "dealing with the factors that may be considered in determining the reasonableness of a fee." Dill also detailed his experience and all efforts he made to collect on this debt. In addition, he stated that: (1) from February 1, 2010 to March 31, 2010, BTBCS incurred $4,104.41 in reasonable and necessary attorney's fees associated in the collection of this debt; (2) from April 1, 2010 to April 30, 2010, BTBCS incurred $8,773.30 in attorney's fees associated with this matter; and (3) from May 1, 2010 to August 31, 2010, BTBCS incurred $13,497 in attorney's fees in this matter. The sum total of these amounts is $26,374.71. Dill further mentioned that these fees were reasonable and necessary in this matter; that he is aware of the reasonable and necessary attorney's fees customarily charged in Brazos County and surrounding counties; and that the fees charged in this matter are similar to those charged in other counties "for the same or similar services for an attorney with my experience, reputation, and ability."

---

[8] Curiously, Dr. Ally does not cite to the purported "Lodestar" case.

The Texas Supreme Court has stated that a factfinder should consider the following factors when determining the reasonableness of attorney's fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (STATE BAR RULES, art. X, § 9); *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880 881 (Tex. 1990)). Moreover, an attorney's affidavit is sufficient proof of attorney's fees when the affidavit is unchallenged. *In re Friesenhahn*, 185 S.W.3d 16, 21 (Tex. App.—San Antonio 2005, pet. denied) ("Because the attorney's fees were unchallenged, the affidavit of the lawyer as an expert on his fees is sufficient summary judgment proof of the reasonableness of the fees requested.") (citing *Querner Truck Lines, Inc. v. Alta Verde*

*Indus., Inc.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ)). And, an attorney's testimony is taken as true as a matter of law if it is: (1) clear, positive, and direct; and (2) uncontroverted. *Ragsdale*, 801 S.W.2d at 882.

Here, Dill's attorney's fees affidavit touches on many of the factors articulated in *Arthur Andersen*. See 945 S.W.2d at 818. Furthermore, Dr. Ally did not tender any affidavits or other evidence to controvert Dill's attorney's fees affidavit. *See In re Friesenhahn*, 185 S.W.3d at 21; *see also Alta Verde Indus., Inc.*, 747 S.W.2d at 468. We find Dill's affidavit to be clear, positive, and direct as to the issue of attorney's fees. *See Ragsdale*, 801 S.W.2d at 882. Therefore, based on the foregoing, we conclude that BTBCS established its right to $26,374.71 in attorney's fees as a matter of law. Accordingly, we cannot say that Dr. Ally's summary-judgment evidence raises a fact issue as to attorney's fees. We overrule Dr. Ally's first issue.

## IV. DOUBLE RECOVERY

In his second issue, Dr. Ally complains that the trial court's summary-judgment order should be reversed because BTBCS obtained a judgment against Dr. Miller for the full amount allegedly owed under the note. Dr. Ally argues that, because of the agreed judgment between BTBCS and Dr. Miller, the trial court's summary-judgment order authorizes a double recovery in favor of BTBCS. We disagree.

### A. Applicable Law

It is axiomatic that a party is not entitled to a double recovery. *See Waite Hill Servs. v. World Class Metal Works*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam). A double recovery exists when a plaintiff obtains more than one recovery for the same injury. *See*

*id.* (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)); *see also Dhanani v. Giles*, No. 10-07-00144-CV, 2008 Tex. App. LEXIS 3926, at *12 (Tex. App.—Waco May 28, 2008, pet. denied) (mem. op.). "Appellate courts have applied the one satisfaction rule when the defendants commit the same act as well as when the defendants commit technically differing acts which result in a single injury." *Sterling*, 822 S.W.2d at 7.

However, Texas Rules of Civil Procedure 40 provides, in relevant part, that:

> all persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transactions, occurrence, or series of transactions or occurrence and if any questions of law or fact common to all of them will arise in the action.

TEX. R. CIV. P. 40. It is undisputed that both Dr. Ally and Dr. Miller signed the underlying documents as guarantors for the $500,000 loan. Furthermore, the note itself specifically provided that:

> If this note is executed by more than one party, each such party shall be jointly and severally liable for the obligations of Maker under this Note. If Maker is a partnership, each general partner of Maker shall be jointly and severally liable hereunder, and each such general partner hereby waives any requirement of law that in the event of a default hereunder Payee exhausts any assets of Maker before proceedings against such general partner's assets.

Based on the unambiguous language of the note, both Dr. Ally and Dr. Miller are jointly and severally liable for the debt. *See Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996) (stating that the construction of an unambiguous contract is a question of law for the court to determine de novo); *see also Mid-South Telecomm. Co. v. Best*, 184 S.W.3d 386, 390 (Tex. App.—Austin 2006, no pet.) (noting that we construe a debt guaranty as any other contract).

The supreme court has stated that, under the one satisfaction rule, the non-settling defendant is entitled to offset any liability for joint and several damages by the amount of common damages paid by the settling defendant, but not for any amount of separate or punitive damages paid by the settling defendant. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 391-92 (Tex. 2000); *see also Hill v. Budget Fin. & Thrift Co.*, 383 S.W.2d 79, 81 (Tex. Civ. App.—Dallas 1964, no writ) ("[A] plaintiff must only give credit to a non-settling defendant for that part of the damages . . . received from settling defendants that are applicable to all equally.").

## B. Discussion

Here, the record does not reflect that, at this point, any amounts have been paid by either party. In this issue, Dr. Ally primarily asserts various hypothetical situations to demonstrate that BTBCS would be unjustly enriched. Based on our review of the record, Dr. Ally's complaints about double recovery appear to be premature. And, according to the above-mentioned authority, Drs. Ally and Miller would be entitled to credit for amounts paid by the other, which undermines Dr. Ally's contention that BTBCS would receive a double recovery.[9] *See Casteel*, 22 S.W.3d at 391-92; *see also Hill*, 383 S.W.2d at 81. We, therefore, overrule Dr. Ally's second issue.

---

[9] We also note that an interlocutory judgment is merged into a final judgment when all the remaining claims are resolved, either on the merits or by dismissal. *See Webb v. Jorns*, 488 S.W.2d 407, 408-09 (Tex. 1972); *see also Radelow-Gittens Real Prop. Mgmt. v. Pamex Foods*, 735 S.W.2d 558, 560 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). In this case, BTBCS obtained an agreed judgment against Dr. Miller, which was interlocutory in nature because all of the remaining claims and parties had not been resolved. *See Bobbitt v. Stran*, 52 S.W.3d 734, 734 (Tex. 2001) (per curiam) (concluding that a judgment was interlocutory when it did not dispose of all claims and parties). Therefore, the trial court's summary-judgment order against Dr. Ally, which, as we noted earlier, disposed of all remaining claims and parties, was merged with the agreed judgment against Dr. Miller. *See Webb*, 488 S.W.2d at 408-09; *see also Pamex Foods*, 735

## V.    CONCLUSION

Having overruled all of Dr. Ally's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed February 29, 2012
[CV06]

---

S.W.2d at 560.  Thus, we disagree with Dr. Ally's assertion that BTBCS obtained two separate and distinct judgments, which authorized a double recovery.